**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CASSANDRA WILLIAMS, | ) | |
| | ) | Case No. 22 C 1084 |
| Plaintiff, | ) | |
| | ) | District Judge Marvin E. Aspen |
| v. | ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| CITY OF CHICAGO and JASON E. BROWN, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This Memorandum Opinion and Order addresses a question that various civil rights plaintiffs and the Defendant City of Chicago ("the City") have litigated for several years in the Northern District of Illinois: The degree to which a civil rights plaintiff's use of so-called "complaint register" or "CR" files, when produced in discovery, may be restricted under a protective order, for "good cause" per Federal Rule of Civil Procedure 26(c)(1). The question also encompasses the degree to which document production in federal civil discovery should track the procedure a State of Illinois governmental entity would follow in determining whether material requested under a state Freedom of Information Act request should be withheld as exempt from disclosure under that statute. The City presents these issues as well-settled, but different courts in this district have resolved them in different ways. This Court examined various published and unpublished decisions of courts in this district in resolving a question that, as it turns out, has no one answer and no easy answer. In this matter before the magistrate judge on a referral for discovery supervision (D.E. 34), before the Court is Plaintiff's Motion for Entry of the Northern District's Model Confidentiality Order ("Motion"; D.E. 27).

## BACKGROUND

In this civil rights action under 42 U.S.C. § 1983, Plaintiff Cassandra Williams ("Plaintiff") is a Chicago police officer who has sued the City and her former police superior Jason Brown (collectively, "Defendants"), alleging that Brown retaliated against Plaintiff for speaking out about Brown's having assigned Plaintiff and other officers to guard for six nights the Chicago city block where Brown lived, during a period of civil unrest the city experienced in the spring of 2020 after the death of George Floyd at the hands of police in Minneapolis, Minnesota. Plaintiff has alleged that Brown committed a constitutional tort by retaliating against Plaintiff for exercising Plaintiff's First Amendment rights, and that Brown violated the Illinois Whistleblower Act, 740 ILCS 174/5 *et seq*. The Defendant City is named in an indemnification count.

Plaintiff's motion asks the Court to enter the Court's model confidentiality order, which contains no specific reference to CR files or disciplinary records, and no specific limitations on their dissemination and use in the litigation. Defendants contend that the model order does not adequately protect sensitive aspects in the CR files from public disclosure. Defendants argue for a modified order that broadens the scope of "confidential" information to include all CR files in their entirety, with the effect of limiting Plaintiff's ability to share those files with witnesses or interviewees other than "during their depositions." Appendix A ¶¶ 2, 5 (showing, in "track changes," Defendants' proposed modifications to the district court's model order). By adding the entire CR files to the definition of "confidential information," Defendants' proposed modifications to the model confidentiality order restrict Plaintiff's counsel's use of the CR files by prohibiting counsel from showing those files to any "other" person (i.e., other than the parties or their counsel or consultants), unless counsel notifies Defendants 30 days in advance, and unless Defendants have supplied Plaintiff with copies redacted to exclude up to 37 types of information that Illinois

statutes restrict from public disclosure, mostly under the Illinois Freedom of Information Act ("Illinois FOIA" or "IFOIA"). *Id.* at 2(b). But Defendants' blanket solution to the problem of protecting personal identifying information, and the wide variety of other information shielded from disclosure under Illinois FOIA and several other Illinois statutes, is to treat all of the CR file information as "confidential" so that none of it may be shared with witnesses outside their actual depositions, at least without the screening procedure of advance notice, and advance redaction.[1]

The 37 types of information that Defendants say may be redacted from Illinois FOIA responses include the names of civilian witnesses and CR complainants; the names of confidential sources and the confidential information they have provided to law enforcement; personal identifying information such as birthdates, phone numbers, or residential or email addresses; and certain medical and financial or credit information.[2] *Id.* The revised Paragraph 2 as proposed by Defendants is as follows, with the proposed revisions italicized and the redaction list excluded for the sake of brevity:

---

[1] In reading Defendants' Response as a whole, the Court cannot help but conclude that Defendants seek an order that treats all CR files as "confidential" in their entirety, despite the following statement in their proposed order: "Subject to this public release procedure set forth above for CR Files, *information or documents that are available to the public may not be designated as Confidential Information*." Appendix A ¶ 2(b) (emphasis added). The district court analyzed this language in *Jackson v. City of Chicago, et al.*, No. 14 C 6746, 2017 WL 5478303, at *3-4 (N.D. Ill. Nov. 14, 2017), concluding that it appears to be designed to address First Amendment concerns about the chilling effect the order could have on the speech of parties who receive CR file information from independent sources. *Jackson* concluded that the language still might leave recipients of such information wondering whether they must invoke the screening process before they could speak to others about the information, and that in *Jackson*, the City had not attempted to show "that the chill imposed on disseminating publicly available information found in CR files is no greater than necessary to further its legitimate interests." *Id.* at *4.

[2] The Court interprets Defendants' proposed order, and the model order, as allowing Plaintiff's counsel to receive unredacted versions of CR files. Assuming for the moment that the Court disallows Defendants' proposed wholesale designation of all CR files as "confidential" and instead allows only a more limited set of information within those files to be redacted as "confidential," Plaintiff's counsel still would receive the unredacted versions, and as to any subset of redacted documents Plaintiff receives, counsel could show only the redacted versions of those documents with "other persons" (such as interviewees and witnesses being interviewed before or outside their depositions).

**Confidential Information and Public Release Procedure.**

      **(a)**     **Confidential Information.** As used in this Order, "Confidential Information" means information designated as "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER" by the producing party that falls within one or more of the following categories: (a) information prohibited from disclosure by statute; (b) information that reveals trade secrets; (c) research, technical, commercial or financial information that the party has maintained as confidential; (d) medical information concerning any individual; (e) personal identity information; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; or (g) personnel or employment records of a person who is not a party to the case; and *(h) any information contained within the following file materials that are otherwise prohibited from public disclosure by statute, subject to the public release procedure set forth in paragraph 2(b) below:*

      *Any disciplinary actions, files and attachments to such files generated by the investigation of deaths in custody, uses of deadly force, and complaints of misconduct by Chicago police officers (generally referred to as "Log Number" files, "Complaint Register" files, "Universal" files, or Extraordinary Occurrence" files, hereinafter referred to as "CR Files").*

      **(b)**     *Public Release Procedure for CR Files Produced in Pre-Trial Discovery. CR Files, due to their burdensome size and amount of information that needs to be reviewed on a page-by-page, case-by-case basis, prior to any public release, shall be provided preliminary protection from public dissemination pursuant to this Order consistent with the "voluminous requests" procedures under the Illinois Freedom of Information Act, 5 ILCS 140/1, et seq. ("IFOIA") (5 ILCS 140/2(h) and 3.6). Their review and access as produced in un-redacted litigation format pursuant to this Order shall be limited only to those parties identified in Section 5 of this Order for use in this litigation and shall not be released to any other persons except upon written notice, 30 days prior, to the officer's attorney(s) and to the City of Chicago's attorney, if different, to permit such attorneys and parties to provide an IFOIA-screened copy of the CR Files within that time or any other further reasonable time granted by the Court, which will then be produced without the designation "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER." This second copy will contain redactions of information prohibited from public disclosure by statute, including but not limited to IFOIA, the Illinois Personnel Records Review Act, 820 ILCS 40/.01, et seq., the Illinois Identity Protection Act 5 ILCS 179/10(b)(1), and the Juvenile Court Act, 705 ILCS 405/1-1, et seq., as follows* [list of 37 redaction criteria omitted but see Appendix A] ….

      *Furthermore, in addition to disclosures permitted pursuant to paragraphs 5(b)(7) and (8) of this Order, counsel for the parties may orally communicate to potential witnesses, for purposes of this litigation only, information contained in CR Files to the extent the information conveyed is not IFOIA-protected information described in the "IFOIA Redaction List" set forth above.*

*Id.*

To be clear, we note that insofar as the foregoing excerpt (Paragraph 2(a) of Defendants' proposed order) would allow entire CR files to be designated for "confidential" treatment, only the persons described in Paragraph 5 would be authorized to view *any part* of the CR Files, including those not subject to redaction. In Defendants' version, Paragraph 5's list of persons who may see any part of a CR file excludes witnesses being interviewed or being prepared in advance for a deposition, or, for that matter, "other" persons whom Plaintiff's counsel might wish to interview to determine whether they are witnesses. Before Plaintiff's counsel could show (or orally reveal the contents of) a CR file to such witnesses or potential witnesses, Defendants' proposed order would require 30 days' notice to allow Defendants time to make redactions, unless Plaintiff were to wait until the witnesses' actual depositions to reveal or show them the material – during their depositions. Defendants maintain that their proposed screening framework strikes a balance between the need to protect from disclosure the parts of the CR files subject to redaction under Illinois law and the need to conserve the parties' resources and to manage discovery efficiently, considering the additional time and expense that would be involved in the defense's production if Defendants were required to comb through voluminous CR files to redact them before any CR files could be produced in this case. Defendants' Response at 3-7. Defendants also point to numerous other Northern District of Illinois matters in which their proposed screening process was approved for inclusion into protective orders. *Id.* at 4-5.

In arguing for the model order, Plaintiff calls Defendants' broadened definition of "confidential" information "overly inclusive" and their proposed screening procedure an infringement upon Plaintiff's protected attorney work product insofar as (1) Defendants' proposed sweeping inclusion of CR files, in their entirety, in the order's definition of "confidential

information" is "contrary to law" because CR files in general are considered public documents under Illinois law, and (2) Defendants' proposed 30-day advance notice period for the screening of redacted material from a CR file before it may be shown to a witness other than during that witness's deposition will unduly impede Plaintiff's efforts to conduct discovery through witness interviews and will place Plaintiff in the position of revealing the attorneys' work product to defense counsel before any witness interview in which a CR file is proposed to be used or disclosed.  Plaintiff's Reply (D.E. 33) at 2.

## ANALYSIS

The legal standard under which the Court determines the appropriateness of a proposed protective order is "good cause." A court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also Bond v. Utreras*, 585 F.3d 1061, 1074 (7th Cir. 2009) (describing Rule 26(c) as allowing courts to shield unfiled discovery documents "when there is good cause to do so."). The Court's decision as to whether a proposed protective order is appropriate, and as to the degree of protection the law may require, is within the broad discretion of the district court. *Sokol v. City of Chicago, et al.,* No. 13 CV 5653, 2014 WL 5473050, at *1 (N.D. Ill. Oct. 29, 2014). The moving party bears the burden of establishing good cause on protective order motions, and the Court's determination of whether good cause is shown balances the harm to the party seeking the protective order against the importance of disclosure. *Id.* More generally, the management of discovery in this matter is committed to the discretion of the magistrate judge. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013). On review by a district court of a magistrate judge's discovery determination, the district court will not reverse on a Rule 72 objection unless the magistrate judge's determination was clearly erroneous or contrary to law, *Diamond Servs. Mgt.*

*Co. LLC, et al. v. C&C Jewelry Mfg. Co., et al.*, No. 19-cv-7675, 2022 WL 4466076, at *16 (N.D. Ill. Sept. 26, 2022), even if the district court might have reached a different conclusion in the first instance on the very same question as that presented here. *See Jardinas v. City of Chicago, et al.*, No. 18 C 7329 (N.D. Ill. Apr. 18, 2019) (D.E. 60) (overruling Rule 72 objection to magistrate judge's decision not to enter confidentiality order with terms sought in the instant matter by Defendants) (unpublished). In Part I, we analyze the City's proposal that the CR files, in their entirety, be labeled confidential, and we conclude that they should not be, although we also agree to restrict their use and dissemination to the purposes of the litigation only. In Part II, we explain why the City's proposed advance notice and screening procedure for redacted CR file documents unreasonably burdens Plaintiff's right to shield attorney work-product mental impressions from discovery. In Part III, we set forth a modified formulation of the district's model confidentiality order as an effort to balance the Defendants' (and others') privacy interest in the CR files with the Plaintiff's need to investigate and prepare the case.

I.    **Defendants' Expansive Definition of "Confidential" Information To Include Entire CR Files Is Overbroad, But the Files Should Receive Limited Protection.**

The first point of disagreement here, and in other cases in which Defendants' proposed definition of "confidential" information to include CR files has been litigated, is whether "good cause" can be established to limit the use in discovery of the files in their entirety. Plaintiff contends, and Defendants agree, that in *Kalven v. City of Chicago*, 7 N.E.3d 741, 747-48 (Ill. App. 1st Dist. 2014), *overruled in part on other grounds*, 106 N.E.2d 1016, 1031 (Ill. 2018), the Illinois Appellate Court ruled that in general, CR files are not entitled to "blanket" exemption from disclosure under the Illinois Freedom of Information Act. *See* Plaintiff's Reply at 2-3; Defendants' Response at 3. The *Kalven* court recognized that some portions of CR files could be redacted (and possibly subjected to *in camera* review) in response to a FOIA request, such as material protected

7

by the deliberative process privilege. *Id.* Plaintiff contends that because *Kalven* made the CR files publicly available, these files should not be subject to a blanket "confidential" designation, in a protective order in federal litigation, that limits a federal litigant's use of all information and contents in these files.

Defendants counter that their form of protective order is needed to provide adequate protection to specific types of information within the CR files, in that public entities under the Illinois Freedom of Information Act are permitted to withhold from the public those specific types of information. Defendants' Response at 3-5. Defendants also argue that their form of protective order would facilitate discovery by relieving Defendants of the purportedly onerous task of pre-production document review and redaction. *Id.* at 6-7. But Defendants never say precisely how the model protective order falls short of limiting appropriately the use of information whose use Defendants believe must be limited. Presumably, Defendants are concerned that if the Court were to allow Plaintiff to reveal or show any CR files to witnesses or others outside their actual depositions, without Defendants' proposed 30 days' advance notice and screening procedure, any part of those files revealing information that the City could have redacted from a FOIA response would fall into the hands of anyone Plaintiff might choose to show the documents, for purposes within and without this litigation, and without Defendants' knowledge.

The Court shares that concern but is not willing to go to the same preventive lengths as Defendants propose.

First, Defendants' proposed solution of making entire CR files eligible for "confidential" designation is overbroad because Illinois law does not shield all the information in the CR files from public disclosure. *Kuri v. City of Chicago, et al.,* No. 13 C 1653, 2014 WL 12932201, at *2 (N.D. Ill. June 11, 2014). In *Kuri,* the court saw the question of whether "good cause" could be

shown to treat an entire CR file (or set of such files) as "confidential" under a protective order as "resolved" by the Illinois Appellate Court in *Kalven*. *Id.* The result of *Kalven* was that CR files are now subject to public inspection under Illinois law, so that allowing CR files disclosed in discovery to receive "confidential" treatment in a protective order "would do little more than plug a hole in a levee that has already burst," and with the files already publicly available through Illinois FOIA, using a confidentiality clause to prevent their dissemination would be "futile," the *Kuri* court reasoned. *Id.* A confidentiality clause in a protective order thus "cannot alleviate" concerns about whether disclosure of the CR files would cause "annoyance, embarrassment, and invasion of privacy" to police officers. *Id.* The court in *Sokol* reached a similar result, concluding that the City's ability to redact some information from CR files in FOIA responses did not justify confidential designation of *entire* CR files in federal civil discovery. 2014 WL 5473050, at *3. The City's proposed order in *Sokol*, like the proposed order in the instant matter, "treats CR files as presumptively confidential *unless* plaintiff gives defendants thirty days' written notice of a request for a redacted copy. Defendants have failed to show good cause for treating entire CR files as confidential by default." *Id.* (emphasis in original). In *Jackson*, another important opinion on the subject of restrictions on use of CR files in federal discovery, the court drew on *Sokol* in denying without prejudice an unopposed City motion for entry of the same kind of protective order sought here. 2017 WL 5478303, at *2-3. "*Sokol*'s observation that most of what CR files contain is not confidential and the implicit judgment that adding the 30-day notice period will hinder more than help the discovery process accords with the court's experience in similar cases." *Id.*

Second, the Court rejects Defendants' assertion their task of redacting FOIA-exempted information from the CR files available for pre-deposition use with witnesses will be so burdensome that Defendants should be relieved of that task. *See* Defendants' Response at 6-7.

The district court in *Jardinas* rejected just such an argument in affirming a magistrate judge's refusal to require Defendants' proposed screening procedure for CR files, reasoning simply that "[p]arties regularly review their documents before producing them in discovery." *Jardinas*, No. 18 C 7329 (D.E. 60) at 2. Defendants here have not alleged the volume of the CR files in question and have not set forth any other specific reasons why achieving their goal of redacting the Illinois FOIA-exempted information would be oppressive or unduly burdensome. Instead, Defendants offer a generalized assertion that the necessary redaction process is "an often burdensome, tedious, and time-consuming case-by-case, page-by-page, paragraph-by-paragraph review." Defendants' Response at 6. Defendants also point out that a 2014 amendment to the Illinois FOIA added a "voluminous requests" provision that allows more time for responding to large (more than 500 pages) Illinois FOIA requests as well as a process for negotiating the scope of such requests and for cost-shifting to the requested person. *Id.*, citing 5 ILCS 140/3.6. But the Court is at a loss to see how the Illinois General Assembly's action to manage the burden and cost associated with responding to Illinois FOIA requests might relieve a federal civil litigant of its obligation to produce documents and to undertake the necessary effort to ensure that document productions are limited to non-privileged, responsive material. *See Jackson*, 2017 WL 5478303, at *2 n.2 ("The Illinois legislature's judgments about the burdens imposed on a public body embodied in the voluminous-records provision therefore do not alter this court's good-cause analysis."). Defendants' broad assertions that the framework in their proposed Paragraph 2(b) would "facilitate discovery" and allow the "expedited production" of responsive documents, Defendants' Response at 6-7, is not enough.[3]

---

[3]The Court's view is unchanged by the more specific information the City has offered in the past about the tediousness of the efforts the City might need to undertake:

Plaintiff, whom the Court might expect to complain about oppressive delays in production of the documents Plaintiff has requested, is not complaining and objects to the proposed screening procedure, indicating that Plaintiff sees little if any benefit in how the procedure "facilitates" discovery, and as we discuss further below, Plaintiff asserts that the procedure will only impede discovery in this case. In balancing the harm to the party seeking the protective order (in this case Defendants, who advocate for the more restrictive approach to CR files) against the importance of disclosure, the Court can only conclude that Defendants fall short of their burden to establish good cause for blanket designation of all CR files as confidential. The Court is not persuaded that requiring pre-production redaction of CR files will cripple discovery in this matter, and the Court is more concerned about the deleterious impact the City's proposed language could have on the discovery process, in view of Plaintiff's work-product objections, as discussed further below in Part II.

In addition, much of the City's basis for its claim of undue burden of pre-production redaction lies in the fact that it envisions no fewer than 37 separate categories of information that it believes it may redact to prevent Plaintiff's counsel from sharing the information with witnesses. Many of these categories leave ample room for subjective interpretation and application, all presumably by the City. *Jackson* aptly criticized the City's attempt to import the FOIA-exempt

---

This is a very tedious and labor-intensive job for such large [CR] files. Nearly each and every page of the file contains redactions, and each must be read in context to ensure, among other requirements, personal identifying information is properly redacted. On average, our office is able to FOIA-screen about 5 CR files per week, depending on length and other pending cases. Voluminous requests to FOIA-screen in excess of 500 pages severely hamper the operations of our office …. [T]he protections that FOIA is designed to ensure cannot be fulfilled within such a timeline.

*See Duprey v. City of Chicago, et al.,* No. 15 C 111 (N.D. Ill. Apr. 20, 2015) (D.E. 34-3) (Affidavit of Jill Antonucci White). Other courts have not seen the kinds of burdens of which the City warns, upon entry of the model order. *See Jackson*, 2017 WL 5478303, at *2 ("Indeed, the court denied a request for blanket protection for CRs after *Kalven* and heard no complaints of slow or burdensome discovery from the parties in a case [*Kuri*] involving voluminous production from the City.").

categories into a list of types of information presumptively barred from disclosure in federal civil

discovery:

> T]he proposed confidentiality order lists no fewer than 37 categories of material allegedly protected from public disclosure by Illinois law …. But as proposed, the confidentiality order substitutes categorical rules for redaction even for things that require more nuanced balancing under Illinois law. Some of the categories of material include subjective criteria not present in the cited statutory language.

*Jackson*, 2017 WL 5478303, at *3 (citations omitted).

In the instant case, Defendants' list of material subject to redaction from CR files includes

the following, much of which will require "nuanced balancing":

- Information that can lead to the identification of confidential sources (presumably through derivative use);

- Information deemed confidential from sources deemed confidential;

- Attorney-client communications and materials created at the direction of an attorney;

- Photographs deemed "graphic in nature";

- Information "subject to a court order on an active case (e.g., a protective order)";

- Information that would "interfere with a pending investigation" or would "obstruct an ongoing criminal investigation";

- Information whose release "would endanger the life/physical safety of Police personnel or another";

- Information whose release would "interfere with legal action related to the investigation";

- Information that contains investigative techniques deemed "[u]nique or specialized"; and

- Information whose release "*may* prevent a fair trial (taint a jury pool)" (emphasis added).

Appendix A ¶ 2(b) ("IFOIA Redaction List").

The City's categorical approach to redaction in lieu of "nuanced balancing" led the *Jackson* court to become concerned that the City's inclusion of the redaction categories in a protective order might provide a greater level of protection from disclosure than is found even in FOIA. *Jackson*, 2017 WL 5478303, at *3. This Court will leave that question for another day, but if discovery is to proceed in an orderly fashion here, Defendants will need to avoid applying the same rigidity to Plaintiff's federal civil discovery requests as the City would to a FOIA request. Many of the categories go well past the objective flagging of a Social Security number or a personal address. If indeed the City were to "FOIA-screen" every page of a CR file production, the Court could envision substantial and unnecessary delays as screeners consider whether discovery of some information may "prevent a fair trial" or "interfere" with an investigation or "legal action" related to the investigation. The problem with the tedium and the laboriousness of the City's document review process lies not in the City having to review the documents, but in the tedious and laborious way the City insists it must go about the review, i.e., by conflating FOIA with Rule 26 so that federal discovery becomes an extended FOIA-screening process. Importantly, the FOIA statute itself does not prohibit disclosure of information in federal discovery. It allows information to be redacted from responses to FOIA requests. *See* 5 ILCS 140/7(1) (listing categories of information "exempt from inspection and copying" when sought under "a request … to inspect or copy a public record … under this Section"). The Illinois legislature's intent behind the exemptions appears in the statute as follows:

> This Act is not intended to cause an unwarranted invasion of personal privacy, nor to allow the requests of a commercial enterprise to unduly burden public resources, or to disrupt the duly-undertaken work of any public body independent of the fulfillment of any of the [a]fore-mentioned rights of the people to access to information.

5 ILCS 140/1. Federal civil discovery, on the other hand, is not a FOIA request. *See Jacobs v. City of Chicago, et al.*, No. 14 CV 5335, 2015 WL 231792, at *2 (N.D. Ill. Jan. 16, 2015) ("[A]lthough FOIA does not control this court's determination of whether Defendants have shown good cause, IFOIA is still helpful in making that determination.") (citations omitted). This Court is not persuaded that civil discovery in this case should mimic so precisely a response to a FOIA request.

Some, but not nearly all, of the items on the FOIA exemption list clearly constitute information that at least is of "a personal, private, sensitive, or non-public nature," a formulation used to cabin confidential treatment of CR files in *Jacobs*, 2015 WL 231792, at *3, and borrowed by the Court for inclusion in the order the Court is entering in this matter. For example, information subject to "confidential" designation would likely include the following items from the redaction list in Defendants' proposed order (Appendix A): Items 3 (names of confidential sources and information from which their identity could be derived), 4 (the information confidential sources have provided), 7 (dates of birth), 8-17 and 25-26 (other personal identifying information including personal telephone numbers, residential addresses, Social Security and driver's license numbers), 19 (passwords or access codes), and 21-23 (medical and treatment records), and 24 (juvenile law enforcement records). But a few other items on the exemption list sweep in information typically available to parties in civil discovery, such as the names or witnesses and complainants (Items 1 and 2), persons whom one side thinks are not witnesses or are too tangential, but that the other side might not (Item 6), and performance evaluations (a staple of employment law discovery, Item 29). Other items on Defendants' exemption list are exceedingly vague and subjective, such as Items 32-33 and 35 (information that would interfere with or obstruct an investigation, or with legal action related to it), or 37 (information that "may

14

prevent a fair trial"). Still other items probably warrant societal protection, such as the names of living crime victims (Item 5), individual signatures (Item 18), photographs of victims and CR complainants (Item 27), and so-called "[u]nique or specialized investigative techniques" (Item 36), which may not be nearly as unique, specialized, or unknown as a FOIA-screener might believe. Then there is Item 20, which encompasses attorney-client communications already regulated in federal civil discovery by Rule 26(b)(5). Defendants can withhold privileged information entirely from discovery, so long as they supply the required privilege log under the rule – the structure of Illinois FOIA's regulation of public disclosure of privileged information ought to have no impact at all on how that information is treated in federal civil discovery. Defendants had no business using the FOIA exemptions to create, intended or not, an end run around Rule 26(b)(5), and Item 20 has no place in a proper protective order. Item 20's sweeping privileged information out of the federal civil discovery portal entirely is a significant example of how using the 37 cited Illinois FOIA categories to transform civil discovery into a "FOIA-screening" process can lead to confusion at best and abuse at worst.

Illinois FOIA's exemption categories therefore are helpful, not by governing the document review, but by informing the parties and the Court that some information, including some contained in CR files, when produced in civil litigation, carries a heightened level of sensitivity and warrants being treated more restrictively in discovery even if contained in documents that still may be "public" in the sense that members of the public could obtain them through FOIA. And that leads to our conclusion that the CR files produced in discovery should be subject to at least some restrictions on use, even if the entire files are not treated as "confidential" under the protective order for the purpose of whether they may be shown to witnesses.

Courts including the Seventh Circuit have acknowledged that unfiled civil discovery materials are not categorically public simply because they may be discovered in a federal lawsuit. *See Prince v. Kato*, No. 18-cv-2952, 2019 WL 3554533, at *1-2 (N.D. Ill. 2019), citing *Bond*, 585 F.3d at 1074. Accordingly, notwithstanding the Illinois court's determination in *Kalven* that CR files are public records for purpose of a FOIA request, this Court remains charged with exercising its discretion to manage discovery and to pay heed to what courts have called "a substantial interest in ensuring that the discovery process is not abused such that it causes damage to reputation." *Gomez v. City of Chicago, et al.*, No. 16 C 7743, 2017 WL 5517254, at *3 (N.D. Ill. Nov. 17, 2017) (internal quotations omitted). CR files may well be "public" in Illinois under *Kalven*, but in federal civil litigation, unfiled civil discovery is subject to the Court's management for "good cause," to protect persons from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). Though publicly accessible through FOIA, the CR files are sensitive employment records. They reflect accusations against police officers and judgments as to the officers' professional competence, or lack thereof. The Court has no trouble seeing how the sensitive nature of these files deserve at least some protection from unbridled disclosure after production in a federal lawsuit. *See Gomez*, 2017 WL 5517254, at *2 ("even if certain or all of the records at issue were analogous to CR files and subject to disclosure under IFOIA, that would not mean that the public should be able to access them during discovery in this case"). One way to protect the reputational interests implicated by CR files is to limit their use, once discovered in federal litigation, to the instant litigation only. *See Prince*, 2019 WL 3554533, at *4 ("The purpose of discovery here is to illuminate the claims and defenses in *this* litigation.") (emphasis in original).

Accordingly, the Court is not permitting Defendants to use the "confidential" label to cloak produced CR files, in their entirety, with a degree of secrecy that subjects them to the screening

process in Defendants' proposed order. Instead, the Court in its discretion is imposing appropriate limits on use of CR files – in their entirety – by allowing their use and dissemination only for purposes of this litigation, and in a way that does not hamstring Plaintiff's counsel's ability to investigate and prepare the case. The Court sets forth its mechanism in Part III below.

## II.    Defendants' Proposed Form of Order Intrudes Upon Attorney Work-Product Protections and Impedes, More Than It Facilitates, Discovery in This Case.

Plaintiff also argues that Defendants' proposed form of order intrudes upon Plaintiff's attorney work product and operates more to block Plaintiff's discovery efforts than to streamline overall discovery in this case. Plaintiff objects to Defendants' screening process and its prohibition on showing any part of the CR files to prospective or actual witnesses in the case until those witnesses sit for their depositions, or until Defendants have had a chance to redact them or consider redaction. The screening procedure in effect leaves Plaintiff and counsel with three choices during the investigation and preparation of the case: (1) they may stumble blindly into witness depositions, not having used "confidential" CR file documents to interview or prepare those witnesses in advance, and then risk that when a witness sees the documents for the first time during the deposition, that witness gives – and the deposition preserves – unexpected and unfavorable testimony; (2) Plaintiff may disclose to defense counsel, in advance, the documents Plaintiff's counsel might use in a witness interview or in deposition preparation, and wait to receive redacted documents for such use; or (3) Plaintiff may forego entirely the depositions of some witnesses to avoid having to fly blind into those depositions or having to tip defense counsel off about which documents Plaintiff sees as integral to Plaintiff's lines of investigation, theory development, or strategy. The Court finds none of these options is consistent with the protection the attorney work-product doctrine gives to attorney mental impressions, but we will focus on the second of the above three choices, as it is at the heart of Defendants' proposed order.

17

A civil litigant telling an adversary, in advance, what documents the litigant will use in a witness interview would be a highly unusual way of practicing law in civil litigation in this district, or anywhere – except perhaps for civil rights cases involving CR files. The adversary often could deduce what witness or witnesses are the likely interviewees, based on the document. Knowing whom the litigant wants to interview (and about what), an adversary could attempt to interview the witness first. Knowing whom the litigant likely has interviewed, the adversary could interview the witness afterward, ask the witness what questions the litigant asked, and learn the information that the litigant developed through that witness, all after the litigant, and not the adversary, tested and developed the litigant's litigation theories in the litigant's own interview of that witness. The adversary then could continue the piggyback ride to a deposition, where the adversary could preserve testimony that the adversary might not have known about or might not have developed without the benefit of the piggyback ride. The adversary of course could interview witnesses even without advance notice of a plaintiff's intent to use CR files in witness interviews, but the Defendants' proposed screening procedure gives the adversary much more of a road map – as to a plaintiff's intentions and priorities – than the adversary otherwise would have had.

The history of the attorney work-product doctrine in U.S. federal courts is long and well-rooted, tracing to the U.S. Supreme Court's recognition of the doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947), which laid the foundation for the modern rule that work-product materials receive a qualified protection from discovery when efforts to obtain them are:

> simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.

*Id.* at 510. *See also Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 621-22 (7th Cir. 2010) (citing *Hickman* for the following: "[T]he work-product doctrine is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts.")  The Supreme Court in *Hickman* was concerned that attorneys should "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." 329 U.S. at 510.  Fundamentally, lawyers prepare their clients' cases by gathering facts, sorting wheat from chaff by filtering out irrelevant facts or by identifying unfavorable facts, all while preparing legal theories and strategies "without undue and needless interference."  *Id.* at 511.

> That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways – aptly though roughly termed by the Circuit Court of Appeals in this case (153 F.2d 212, 223) as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. [A]ttorney[s'] thoughts, heretofore inviolate, would not be [their] own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.*

No sensible person could think that putting Plaintiff or counsel to the three choices we have outlined above for witness interviews, by operation of Defendants' proposed form of protective order, would "facilitate" discovery.  This sort of discovery regime would promote Defendants' piggybacking off Plaintiff's counsel's attorney mental impressions or, alternatively, would prompt a level of caution in discovery, on Plaintiff's part, that puts civil discovery on a par with the kind

of sharp practice and "demoralizing" impact on the legal profession that the Supreme Court warned us about in *Hickman* in 1947. In short, requiring a litigant to drop breadcrumbs about what witnesses the litigant's attorney has deemed worthy of interview and investigation, and to disclose what document or documents the attorney plans to use in interviews, is too close to the kind of piggybacking and invasion into attorney thought processes that the Supreme Court prohibited in *Hickman* and that federal courts including this one have eschewed ever since. *See In re Turkey Antitrust Litig.*, No. 19 C 8318, 2022 WL 797180, at *7-9 (N.D. Ill. Mar. 16, 2022); *see also* David M. Greenwald & Michele L. Slachetka, *Testimonial Privileges*, Vol. 1, § 2.2 at 595 (Thomson Reuters 2021 ed.) ("The work product doctrine protects a 'zone of privacy' within which to prepare the client's case and plan strategy, without undue interference. Courts widely echo this 'zone of privacy' rationale for the work product doctrine.") (citing cases).

Defendants' suggestion that a consensus of Northern District of Illinois courts have approved or adopted Defendants' form of order does not alter the analysis. Defendants did not use the word "consensus," but they asserted that "[t]he language forming the screening process set forth in paragraph 2(b) of Defendants' proposed Confidentiality Order has been approved and entered in other lawsuits filed in the Northern District and the Circuit Court of Cook County," adding a string cite of 12 federal district court rulings and three rulings by the Cook County Circuit Court. Defendants' Response at 4-5. Superficially, the string cite might appear persuasive, in that the list of unpublished docket citations is a long one. The Court accessed the dockets to review what happened in the 12 federal matters in which judges entered Defendants' preferred form of order, without considering the three state court matters. The Court found that in eight of the 12 cited federal matters, the Defendants' preferred order was entered by agreement, was unopposed, was opposed initially and then later entered by agreement, or was entered after nothing in the

public record indicated any objection or disagreement from plaintiffs.[4]  The Court attaches no weight to these eight agreed or unopposed orders in this matter in which Plaintiff has objected to Defendants' proposed language.  The Court has no idea why plaintiffs in those eight cases agreed or did not object, and so we have insufficient information to infer that those plaintiffs concurred that good cause could be shown to support Defendants' proposed language.  Those plaintiffs might have given little thought to the issue. They might have horse-traded it with another issue or picked their battles, as litigants sometimes do.  In any event, the courts in those eight cases were not presented with the dispute now before this Court.

In the other four federal cases in Defendants' string cite, plaintiffs objected to the Defendants' proposed form of protective order.  In each of those four matters, courts eventually overruled those objections or otherwise decided to enter confidentiality orders identical or virtually identical to the order Defendants propose in this case.[5]  But the brief text orders appearing on the docket in those cases, with one exception, tell us relatively little about the reasoning of those courts or about how they undertook the necessary "case-specific balancing of all of the facts and circumstances including 'privacy interests, whether the information is important to public health

---

[4] *Patterson v. City of Chicago, et al.,* No. 14 C 6458 (N.D. Ill. May 28, 2015) (D.E. 25, 26); *Ball v. Cortes, et al.*, No. 11 C 8741 (N.D. Ill. May 21, 2015) (D.E. 38, 42); *Kinslow v. Duckins, et al.*, No. 14 C 6005 (N.D. Ill. May 20, 2015) (D.E. 35); *Santiago v. City of Chicago, et al.*, No. 14 C 8205 (N.D. Ill. June 9, 2015) (D.E. 22, 25); *Mock v. Castro, et al.*, No. 14 C 3274 (N.D. Ill. June 12, 2015) (D.E. 47, 50); *Warren v. City of Chicago, et al.*, 14 C 7514 (N.D. Ill. June 19, 2015) (D.E. 40, 42); *Allen v. City of Chicago, et al.*, No. 14 C 6217 (N.D. Ill. June 29, 2015) (D.E. 43, 46); *Horton v. City of Chicago, et al.*, No. 13 C 6865 (N.D. Ill. June 30, 2015) (D.E. 105, 107).

[5]*Harris v. The City of Chicago Police, et al.*, No. 19 C 5878 (N.D. Ill. Feb. 12, 2020) (D.E. 54); *DeLeon-Reyes v. Guevara, et al.*, No. 18 C 1028 (N.D. Ill. Feb. 11, 2019) (D.E. 149); *Solache v. City of Chicago, et al.*, No. 18 C 2312 (N.D. Ill. Feb. 11, 2019) (D.E. 79); *Duprey*, No. 15 C 111 (N.D. Ill. May 12, 2015) (D.E. 42, 43); *Romero v. City of Chicago, et al.*, No. 14 C 6137 (N.D. Ill. May 6, 2015) (D.E. 28).  Because *De-Leon Reyes* and *Solache* are related cases in which a coordinated discovery referral went to a single magistrate judge, *Solache*, No. 18 C 2312 (D.E. 40), the accurate number of federal judicial decisions Defendants cited as having entered their proposed form of protective order over objection is four, and the accurate number of total federal decisions Defendants cited as reaching Defendants' preferred result is 12.

and safety and whether the party benefiting from the confidentiality of the protective order is a public official.'" *Jackson*, 2017 WL 5478303, at *2.

The exception is *Duprey*, in which the district court at first denied in part the City's motion for its proposed order, stating in a text order that "[t]here shall be no pre-approval of wholesale confidentiality protection for complaint-register files, nor likewise wholesale pre-disapproval of a redaction," and requiring the defendants to provide the basis for any redactions, contemporaneously with production of the redacted materials. No. 15 C 111 (N.D. Ill. April 6, 2015) (D.E. 30). Then, on the City's motion for reconsideration, the *Duprey* court entered an order very much like the order Defendants request here, including an important change from the proposed order the City initially proposed to the *Duprey* court. The change added this line to the operative paragraph (now in Paragraph 2(b) of Defendants' proposed order here) containing the screening procedure for CR files:

> Furthermore, in addition to disclosures permitted pursuant to paragraphs 5(b)(7) and (8) of this Order, counsel for the parties may orally communicate to potential witnesses, for purposes of this litigation only, information contained in CR Files to the extent the information conveyed is not IFOIA-protected information described in the "IFOIA Redaction List" set forth above.

*Duprey*, No. 15 C 111 (N.D. Ill. May 12, 2015) (D.E. 43). The *Duprey* court concluded, according to the text order, that "[t]he new provision authorizing verbal disclosure to potential witnesses should address the concern of Plaintiff's counsel about the need to interview potential witnesses." *Id.* (D.E. 42.) Also in *Duprey*, the court followed a text order in *Romero,* the last of the four federal cases to which Defendants cited and in which the City's request for its form of protective order was not unopposed. The contested protective order motions in *Duprey* and *Romero* were decided at virtually the same time. After *Duprey* initially rejected the City's proposed protective order, *Romero* followed that ruling, and after *Romero* entered the City's preferred order on the City's

motion for reconsideration, *Duprey* followed *Romero* in granting the City's motion for reconsideration in *Duprey*. The clearest rationale the public record offers for the judicial decisions in *Duprey* and *Romero*, then, is found in the *Duprey* text order quoted above, and the further statement in that text order that:

> The revised order balances the need to apply other FOIA exemptions to parts of the complaint files with the need to promptly advance discovery in the litigation …. The Court does expect that, in order to avoid delay and unnecessary disputes … *the parties will cooperate in good faith to address complaint-register and related files*. That means that, on the front-end the defense will very promptly produce the unredacted versions so that Plaintiff's counsel may, as early in discovery as possible, make disclosure notifications to defense counsel. On the back end, after receipt of a disclosure notification, the defense must make every effort to meet the 30-day deadline, and also must reasonably accommodate requests for speedier turn-around to avoid the need to continue discovery deadlines (especially in view of the fact that very few requests have been made under the procedure.)

*Id.* (citation omitted) (emphasis added).

*Duprey*'s hard work in 2015 sought a procedure to minimize delays that could ensue from requiring pre-production redaction and from getting plaintiffs' counsel the documents they need to conduct interviews. In practice, though, this Court sees this regime, and thus the regime of the City's proposed order in this matter, as unworkable. Allowing Plaintiff to convey orally the content of a CR file to a potential witness sounds permissive, but this mechanism still requires that even the oral disclosure not contain the Illinois FOIA-redacted information. Plaintiff's counsel will not know what those redactions are until counsel has told defense counsel what documents might be disclosed to a witness, and until after defense counsel has supplied the redacted documents in turn. Showing or revealing the content of a CR file to a witness without first notifying defense counsel would risk violating Defendants' form of order, by taking a chance that the CR file contains some matter that Defendants would see as necessary for redaction. Defendants do not even suggest that Plaintiff's attorneys might be able to anticipate the redactions themselves,

and nor is Defendants' proposed order structured to allow Plaintiff's counsel to do so. The kind of material that could be redacted under the multiple cited Illinois statutes is not necessarily obvious, as we stated above in Part I.

For the reasons stated above, the Court does not find that the 12 federal decisions in Defendants' string cite, alone or in combination, carries the day on the question of whether Defendants' proposed review process unacceptably intrudes on Plaintiff's work product. Other than the *Duprey* text order, as to which this Court differs with the resolution of the work-product objection, the Court has found detailed judicial discussions of Plaintiff's work-product objections to be relatively rare. *See Prince*, 2019 WL 3554533, at *1-5 (denying plaintiff's motion for model order and granting the City's cross-motion for its preferred order, without discussion of the screening procedure's impact on attorney work product, an issue not squarely raised in that case). The Court ordered and examined the hearing transcript in *Harris*, which was included in the City's string cite. In *Harris*, the plaintiff objected to the City's proposed screening procedure's effect on attorney work product, but in overruling that objection and entering the City's proposed form of order, the district court noted that the claims in that case were essentially employment-related and concerned the police officers' employment decisions, and not traditional police misconduct or excessive force claims, so that the CR files would likely be of marginal relevance. No. 19 C 5878 (N.D. Ill. Feb. 12, 2020) (D.E. 93 at 10-12). This Court's read of the overruling of the work-product objection in *Harris* is that it was highly case-specific, although, arguably, the instant matter is not a traditional excessive force or misconduct case either, as it is more of a retaliation case stemming from how Plaintiff was treated at her place of employment, and how her employment conditions were affected. In the Court's discretion to manage discovery, *see Jones*, 73 F.3d at 1115, the Court is placing greater weight on Plaintiff's work-product objections than

did the court in *Harris*, in which the matter arose and was decided on oral argument and not on an in-depth analysis of the available precedent and of the interests the Supreme Court sought to protect in *Hickman*. Plaintiff's work-product objections to Defendants' proposed form of protective order are meritorious and are sustained in this Court's discretion.

## III. The District's Model Confidentiality Order, With Some Modification, Gives the Parties All the Tools They Need To Manage Discovery and Disclosure of "Sensitive" Information.

Paragraph 1 of the district's model order allows for confidential treatment of "information protected from disclosure by statute," personal identity information, and medical record information. In other words, the model order allows Defendants to make their redactions before they produce the CR files to Plaintiff, and thus Plaintiff will have CR file documents for use in interviews without having to make any disclosure to defense counsel about what documents they plan to use or with whom. The model protective order does not allow entire CR files to be redacted or withheld, and the Court has refused to take that step, in a nod to *Kalven.* We are left to resolve what may be redacted from what witnesses may be shown outside their depositions, and how the CR files themselves might be restricted to use or dissemination for purposes of this litigation only.

The likelihood of the CR files containing much of the information Defendants want to redact from the CR files using their FOIA-screening method may be very relatively low. Perhaps that is the reason why, in the experience of the *Jackson* court, the denial of the City's proposed screening procedure did not cripple discovery. Perhaps as the parties delve into the production process, and as they meet and confer, they will find their disputes, and the production process, to be navigable, so long as they act in good faith, as *Duprey* urged. For example, few would dispute that information whose release might endanger the life of a police officer (Item 34) should be redacted from a CR file to be shown to witnesses. Time will tell, but good faith arguably requires

a pace faster than five CR files a week. The Court is ordering the parties to meet and confer in good faith as necessary under the model protective order, as modified herein, to ensure an efficient document review process that does not over-designate publicly available materials as "confidential" and does not infringe upon Plaintiff's attorney work-product protections under *Hickman*, while protecting the societal interests reflected in the Illinois legislature's judgment that not all information in public documents need be disclosed under FOIA.

The Court will enter the district's model confidentiality order, with two changes as follows:

- Paragraph 2 of the model order will have this addition to the definition of "confidential information": "(h) any information in 'complaint register' or 'CR' files that is of a personal, private, sensitive, or non-public nature. Further, when producing to Plaintiff's counsel any CR file document or set of CR file documents, Defendant shall produce (1) an unredacted set of such files, and (2) a redacted set with the following information redacted: (a) information prohibited from disclosure by statute; (b) information of a personal, private, sensitive, or non-public nature; and (c) any other information agreed to by the parties, whereupon any redacted CR file may be shown to any 'other person' or witness only in redacted form, and such other persons or witnesses shall not be provided with their own copies or allowed to keep copies of any CR file document. Any party may file a motion objecting to any redaction, after compliance with Local Rule 37.2"; and

- At the end of Paragraph 2, the following: "Any CR file document produced in discovery in this matter, even those portions not designated as 'confidential' and not redacted, shall not be used or disseminated for purposes other than this litigation."

*See Jacobs*, 2015 WL 231792, at *3; *Prince*, 2019 WL 3554533, at *4; *Gomez*, 2017 WL 5517254, at *3.

The foregoing approach, though likely imperfect, balances the interests of all parties acting in good faith, while acknowledging the distinction between federal civil discovery and Illinois FOIA requests, and while imposing a reasonable limit on use and dissemination of unfiled federal discovery materials. The approach also respects Plaintiff's work-product concerns by not forcing counsel to tell opposing counsel in advance which documents will be used in a witness interview. In developing this approach, the Court has seen the outcome not as a *fait accompli* compelled by

numerous other decisions in this district, but as the product of confronting the complex challenges that CR files have presented courts over the years, yielding no one answer and no easy answer.

## CONCLUSION

For the foregoing reasons, the Court refuses to enter the City's form of protective order and grants in part and denies in part Plaintiff's motion for entry of the district court model order, by entering a confidentiality order modified from the model as set forth above.

**SO ORDERED.**

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED:  October 17, 2022**

## APPENDIX A

Form LR 26.2
MODEL CONFIDENTIALITY ORDER

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CASSANDRA WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 22-cv-1084 |
| | ) | |
| THE CITY OF CHICAGO, Illinois, a | ) | District Judge Marvin E. Aspen |
| Municipal corporation, and Chicago Police | ) | |
| Commander, JASON E. BROWN | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| Defendants | ) | |

**[Agreed]⁶ Confidentiality Order**

The parties to this Agreed Confidentiality Order have agreed to the terms of this Order; accordingly, it is ORDERED:

A party to this action has moved that the Court enter a confidentiality order. The Court has determined that the terms set forth herein are appropriate to protect the respective interests of the parties, the public, and the Court. Accordingly, it is ORDERED:

1. **Scope.** All materials produced or adduced in the course of discovery, including initial disclosures, responses to discovery requests, deposition testimony and exhibits, and

---

⁶ Counsel should include or delete language in brackets as necessary to the specific case. **Any other changes to this model order must be shown by redlining that indicates both deletions and additions to the model text.** Counsel may also modify this model order as appropriate for the circumstances of the case. This model order is for the convenience of the parties and the court and not intended to create a presumption in favor of the provisions in this model order and against alternative language proposed by the parties. The court will make the final decision on the terms of any order notwithstanding the agreement of the parties.

information derived directly therefrom (hereinafter collectively "documents"), shall be subject to this Order concerning Confidential Information as defined below. This Order is subject to the Local Rules of this District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods.

2.    **Confidential Information and Public Release Procedure.**

(a)    **Confidential Information.** As used in this Order, "Confidential Information" means information designated as "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER" by the producing party that falls within one or more of the following categories: (a) information prohibited from disclosure by statute; (b) information that reveals trade secrets; (c) research, technical, commercial or financial information that the party has maintained as confidential; (d) medical information concerning any individual; (e) personal identity information; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; or (g) personnel or employment records of a person who is not a party to the case[7]; and (h) any information contained within the following file materials that are otherwise prohibited from public disclosure by statute, subject to the public release procedure set forth in paragraph 2(b) below:

Any disciplinary actions, files and attachments to such files generated by the investigation of deaths in custody, uses of deadly force, and complaints of misconduct by Chicago police officers (generally referred to as "Log Number" files, Complaint Register" files, "Universal" files, or Extraordinary Occurrence" files, hereinafter referred to as "CR Files"). Information or documents that are available to the public may not be designated as Confidential Information.

(b)    **Public Release Procedure for CR Files Produced in Pre-Trial Discovery.** CR Files, due to their burdensome size and amount of information that needs to be

---

[7] If protection is sought for any other category of information, the additional category shall be described in paragraph 2 with the additional language redlined to show the change in the proposed Order.

reviewed on a page-by-page, case-by-case basis, prior to any public release, shall be provided preliminary protection from public dissemination pursuant to this Order consistent with the "voluminous requests" procedures under the Illinois Freedom of Information Act, 5 ILCS 140/1, *et seq.* ("IFOIA") (5 ILCS 140/2(h) and 3.6). Their review and access as produced in un-redacted litigation format pursuant to this Order shall be limited only to those parties identified in Section 5 of this Order for use in this litigation and shall not be released to any other persons except upon written notice, 30 days prior, to the officer's attorney(s) and to the City of Chicago's attorney, if different, to permit such attorneys and parties to provide an IFOIA-screened copy of the CR Files within that time or any other further reasonable time granted by the Court, which will then be produced without the designation "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER." This second copy will contain redactions of information prohibited from public disclosure by statute, including but not limited to IFOIA, the Illinois Personnel Records Review Act, 820 ILCS 40/.01, *et seq.*, the Illinois Identity Protection Act 5 ILCS 179/10(b)(1), and the Juvenile Court Act, 705 ILCS 405/1-1, *et seq.*, as follows:

**IFOIA REDACTION LIST**

|  | **ITEM TO REDACT** | **EXEMPTION** |
|---|---|---|
| 1. | Names of civilian witnesses | 5 ILCS 140/7(1)(d)(iv) |
| 2. | Names of civilian CR complainants | 5 ILCS 140/7(1)(d)(iv) |
| 3. | Names of confidential sources and information that can lead to the identification of them | 5 ILCS 140/7(1)(d)(iv) |
| 4. | Confidential information from confidential sources | 5 ILCS 140/7(1)(d)(iv) |
| 5. | Names of crime victims (unless they are deceased) | 5 ILCS 140/7(1)(c); 5 ILCS 140/7(1)(d)(iv) |
| 6. | Names of non-attorneys and non-government employees who are | 5 ILCS 140/7(1)(c) |

| | tangential to the incident (i.e., not witnesses) | |
|---|---|---|
| 7. | Dates of birth | 5 ILCS 140/7(1)(c) (Note: the year of birth and age should not be redacted) |
| 8. | Personal telephone numbers (residential and mobile/cell) | 5 ILCS 140/7(1)(b); 5 ILCS 140/7(1)(d)(iv) |
| 9. | Personal email addresses | 5 ILCS 140/7(1)(b); 5 ILCS 140/7(1)(d)(iv) |
| 10. | Incident address when it is a home address | 5 ILCS 140/7(1)(b); 5 ILCS 140/7(1)(d)(iv) |
| 11. | Home addresses | 5 ILCS 140/7(1)(b); 5 ILCS 140/7(1)(d)(iv) |
| 12. | Information that could reveal a home address | 5 ILCS 140/7(1)(b); 5 ILCS 140/7(1)(d)(iv) |
| 13. | Social Security numbers of others | 5 ILCS 140/7(1)(a) – Illinois Identity Protection Act 5 ILCS 179/10(b)(1); 5 ILCS 140/7(1)(b); 5 ILCS 140/7(1)(c); 5 ILCS 140/7(1)(d)(iv) |
| 14. | Driver's License numbers | 5 ILCS 140/7(1)(b); 5 ILCS 140/7(1)(d)(iv) |
| 15. | Personal license plate numbers | 5 ILCS 140/7(1)(b); 5 ILCS 140/7(1)(d)(iv) |
| 16. | IR numbers of victims and witnesses | 5 ILCS 140/7(1)(b); 5 ILCS 140/7(1)(c); 5 ILCS 140/7(1)(d)(iv) |
| 17. | Employee identification numbers | 5 ILCS 140/7(1)(b) |
| 18. | Signatures of non-government employee witnesses, victims and complainants | 5 ILCS 140/7(1)(b) – biometric identifier |
| 19. | Passwords or other access codes | 5 ILCS 140/7(1)(b) |
| 20. | Attorney-client communications, materials created at the direction of an attorney (e.g., internal memoranda) | 5 ILCS 140/7(m) |
| 21. | Medical records | 5 ILCS 140/7(1)(b) |

4

| 22. | OEMC records related to medical treatment (e.g., ambulance run sheets and EMS records) | 5 ILCS 140/7(1)(a) – HIPAA, 5 ILCS 140/7(1)(b) |
|---|---|---|
| 23. | Medical, psychiatric, counseling and substance abuse information summary | 5 ILCS 140/7(1)(c) |
| 24. | Juvenile law enforcement records | 5 ILCS 140/7(1)(a) - Juvenile Court Act 705 ILCS 405/1-7; 705 ILCS 405/5-905 |
| 25. | Financial account numbers | 5 ILCS 140/7(1)(b); 5 ILCS 140/7(1)(c); 5 ILCS 140/7(1)(d)(iv) |
| 26. | Credit/Debit card numbers | 5 ILCS 140/7(1)(b); 5 ILCS 140/7(1)(c); 5 ILCS 140/7(1)(d)(iv) |
| 27. | Photographs of victims and CR complainants | 5 ILCS 140/7(1)(c); 5 ILCS 140/7(1)(d)(iv); 5 ILCS 140/7(1)(d)(vi) |
| 28. | Photographs that are graphic in nature | 5 ILCS 140/7(1)(c) |
| 29. | Performance evaluations | 5 ILCS 140/7(1)(a) – Personnel Records Review Act 820 ILCS 40/11 |
| 30. | Command Channel Review | 5 ILCS 140/7(1)(f) |
| 31. | Information which is subject to a court order on an active case (e.g., a protective order) | 5 ILCS 140/7(1)(a) |
| 32. | Information the release of which would interfere with a pending investigation | 5 ILCS 140/7(1)(d)(i) |
| 33. | Information the release of which would obstruct an ongoing criminal investigation | 5 ILCS 140/7(1)(d)(vii) |
| 34. | Information the release of which would endanger the life/physical safety of Police personnel or another | 5 ILCS 140/7(1)(d)(vi) |
| 35. | Information the release of which would interfere with legal action related to the investigation | 5 ILCS 140/7(1)(d)(ii) – if disciplinary proceeding against officer; 5 ILCS 140/7(1)(d)(iii) – if prosecution of officer |
| 36. | Unique or specialized investigative techniques | 5 ILCS 140/7(1)(d)(v) |

5

| 37. | May prevent a fair trial (taint a jury pool) | 5 ILCS 140/7(1)(d)(iii) |
|-----|-----|-----|

Disclosure of CR Files and their attachments to any persons beyond the parties and their attorneys in this case, or third parties otherwise authorized pursuant to Section 5 of this Confidentiality Order, may be made only in the manner consistent with the IFOIA-redacted version of such CR Files produced by the responding party as set forth above. If any disputes arise pursuant to the application of this provision, concerning the redactions of the CR Files and their attachments, such un-redacted litigation format document(s) produced pursuant to this Section, or information otherwise contained within the redactions as designated in the redacted copy, shall not be publicly released pursuant to this Section without a final determination by this Court pursuant to the same terms provided for any Confidential Information designation under this Confidentiality Order.

Subject to this public release procedure set forth above for CR Files, information or documents that are available to the public may not be designated as Confidential Information. This Order does not apply to materials obtained from sources other than discovery in this case. Furthermore, in addition to disclosures permitted pursuant to paragraphs 5(b)(7) and (8) of this Order, counsel for the parties may orally communicate to potential witnesses, for purposes of this litigation only, information contained in CR Files to the extent the information conveyed is not IFOIA-protected information described in the "IFOIA Redaction List" set forth above.

2.

3.     **Designation.**

(a)     A party may designate a document as Confidential Information for protection under this Order by placing or affixing the words "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" on the document and on all copies in a manner that will not interfere with the legibility of the document. As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential Information. The marking "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" shall be applied prior to or at the time of the documents are produced or disclosed. Applying the marking "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Any copies that are made of any documents marked "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of the Confidential Information are not required to be marked.

(b)     The designation of a document as Confidential Information is a certification by an attorney or a party appearing *pro se* that the document contains Confidential Information as defined in this order.[8]

(b)(c)  Any documents designated as Confidential Information shall be deemed Confidential Information as defined in this order, subject to modification pursuant to Paragraph 2(b) above.

---

[8] An attorney who reviews the documents and designates them as CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER must be admitted to the Bar of at least one state but need not be admitted to practice in the Northern District of Illinois unless the lawyer is appearing generally in the case on behalf of a party. By designating documents confidential pursuant to this Order, counsel submits to the jurisdiction and sanctions of this Court on the subject matter of the designation.

4.      **Depositions**.[9]

**Alternative A**. Deposition testimony, including exhibits, is protected by this Order only if designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the record at the time the testimony is taken. Such designation shall be specific as to the portions that contain Confidential Information. Deposition testimony or exhibits so designated shall be treated as Confidential Information protected by this Order until fourteen days after delivery of the transcript by the court reporter to any party or the witness. Within fourteen days after delivery of the transcript, a designating party may serve a Notice of Designation to all parties of record identifying additionalthe specific portions of the transcript that are designated Confidential Information, and thereafter those additional portions identified in the Notice of Designation shall be protected under the terms of this Order. The failure to serve a timely Notice of Designation waives any designation of additional deposition testimony or exhibits as Confidential Information that was made on the record of the deposition, unless otherwise ordered by the Court.

**Alternative B.** Unless all parties agree on the record at the time the deposition testimony is taken, all deposition testimony taken in this case shall be treated as Confidential Information until the expiration of the following: No later than the fourteenth day after the transcript is delivered to any party or the witness, and in no event later than 60 days after the testimony was given, Within this time period, a party may serve a Notice of Designation to all parties of record as to specific portions of the testimony that are designated Confidential Information, and thereafter only those portions identified in the Notice of Designation shall

[9] The parties or movant seeking the order shall select one alternative for handling deposition testimony and delete by redlining the alternative provision that is not chosen.

~~be protected by the terms of this Order. The failure to serve a timely Notice of Designation shall waive any designation of testimony taken in that deposition as Confidential Information, unless otherwise ordered by the Court.~~

**5.** **Protection of Confidential Material.**

**(a)** **General Protections.** Confidential Information shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in subparagraph (b) for any purpose whatsoever other than in this litigation, including any appeal thereof. ~~**[INCLUDE IN PUTATIVE CLASS ACTION CASE:** In a putative class action, Confidential Information may be disclosed only to the named plaintiff(s) and not to any other member of the putative class unless and until a class including the putative member has been certified.]~~

**(b)** **Limited Third-Party Disclosures.** The parties and counsel for the parties shall not disclose or permit the disclosure of any Confidential Information to any third person or entity except as set forth in subparagraphs (1)-(9). Subject to these requirements, the following categories of persons may be allowed to review Confidential Information:

**(1)** **Counsel**. Counsel for the parties and employees of counsel who have responsibility for the preparation and trial of the action;

**(2)** **Parties.** Individual parties and employees of a party but only to the extent counsel determines in good faith that the employee's assistance is reasonably necessary to the conduct of the litigation in which the information is disclosed;

**(3)** **The Court and its personnel;**

**(4)** **Court Reporters and Recorders.** Court reporters and recorders engaged for depositions;

9

**(5)**      **Contractors.** Those persons specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents;

**(6)**      **Consultants and Experts**. Consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action but only after such persons have completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound;

**(7)**      **Witnesses at depositions**. During their depositions, witnesses in this action to whom disclosure is reasonably necessary. Witnesses shall not retain a copy of documents containing Confidential Information, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts. Pages of transcribed deposition testimony or exhibits to depositions that are designated as Confidential Information pursuant to the process set out in this Order must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order;

**(8)**      **Author or recipient.** The author or recipient of the document (not including a person who received the document in the course of litigation); and

10

(9)    **Others by Consent**. Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered.

(c)    **Control of Documents**. Counsel for the parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential Information. Counsel shall maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.

6.    **Inadvertent Failure to Designate.** An inadvertent failure to designate a document as Confidential Information does not, standing alone, waive the right to so designate the document; provided, however, that a failure to serve a timely Notice of Designation of deposition testimony as required by this Order, even if inadvertent, waives any protection for deposition testimony. If a party designates a document as Confidential Information after it was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to assure that the document is treated in accordance with the provisions of this Order. No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated Confidential Information, even where the failure to so designate was inadvertent and where the material is subsequently designated Confidential Information.

7.    **Filing of Confidential Information**. This Order does not, by itself, authorize the filing of any document under seal. Any party wishing to file a document designated as Confidential Information in connection with a motion, brief or other submission to the Court must comply with LR 26.2.

**8.** **No Greater Protection of Specific Documents.** Except on privilege grounds not addressed by this Order, no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection.

**9.** **Challenges by a Party to Designation as Confidential Information.** The designation of any material or document as Confidential Information is subject to challenge by any party. The following procedure shall apply to any such challenge.

(a) **Meet and Confer**. A party challenging the designation of Confidential Information must do so in good faith and must begin the process by conferring directly with counsel for the designating party. In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation. The designating party must respond to the challenge within five (5) business days.

(b) **Judicial Intervention.** A party that elects to challenge a confidentiality designation may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge. Each such motion must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements of this procedure. The burden of persuasion in any such challenge proceeding shall be on the designating party. Until the Court rules on the challenge, all parties shall continue to treat the materials as Confidential Information under the terms of this Order.

**10.** **Action by the Court.** Applications to the Court for an order relating to materials or documents designated Confidential Information shall be by motion. Nothing in this Order or

any action or agreement of a party under this Order limits the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial.

11. **Use of Confidential Documents or Information at Trial.** Nothing in this Order shall be construed to affect the use of any document, material, or information at any trial or hearing. A party that intends to present or that anticipates that another party may present Confidential information at a hearing or trial shall bring that issue to the Court's and parties' attention by motion or in a pretrial memorandum without disclosing the Confidential Information. The Court may thereafter make such orders as are necessary to govern the use of such documents or information at trial.

12. **Confidential Information Subpoenaed or Ordered Produced in Other Litigation.**

(a)     If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any material or document designated in this action as Confidential Information, the receiving party must so notify the designating party, in writing, immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

(b)     The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order. In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

(c)     The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Information in the court from which the subpoena or order issued. The designating party shall bear the burden and the expense of seeking protection in that court of its

13

Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody or control Confidential Information by the other party to this case.

13. **Challenges by Members of the Public to Sealing Orders.** A party or interested member of the public has a right to challenge the sealing of particular documents that have been filed under seal, and the party asserting confidentiality will have the burden of demonstrating the propriety of filing under seal.

14. **Obligations on Conclusion of Litigation.**

(a) **Order Continues in Force.** Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to further appeal.

(b) **Obligations at Conclusion of Litigation.** Within sixty-three days after dismissal or entry of final judgment not subject to further appeal, all Confidential Information and documents marked "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" under this Order, including copies as defined in ¶ 3(a), shall be returned to the producing party unless: (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction to the extent practicable in lieu of return;[10] or (3) as to documents bearing the notations, summations, or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so.

---

[10] The parties may choose to agree that the receiving party shall destroy documents containing Confidential Information and certify the fact of destruction, and that the receiving party shall not be required to locate, isolate and return e-mails (including attachments to e-mails) that may include Confidential Information, or Confidential Information contained in deposition transcripts or drafts or final expert reports.

(c) **Retention of Work Product and one set of Filed Documents.** Notwithstanding the above requirements to return or destroy documents, counsel may retain (1) attorney work product, including an index that refers or relates to designated Confidential Information so long as that work product does not duplicate verbatim substantial portions of Confidential Information, and (2) one complete set of all documents filed with the Court including those filed under seal. Any retained Confidential Information shall continue to be protected under this Order. An attorney may use his or her work product in subsequent litigation, provided that its use does not disclose or use Confidential Information.

(d) **Deletion of Documents filed under Seal from Electronic Case Filing (ECF) System.** Filings under seal shall be deleted from the ECF system only upon order of the Court.

15.     **Order Subject to Modification**. This Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter.

16.     **No Prior Judicial Determination.** This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any document or material designated Confidential Information by counsel or the parties is entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody, or control Confidential Information by the other party to this case.

17.    **Persons Bound.** This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

17.**18.  Public Disclosure of Documents Designated as Confidential Information.** This Order prohibits the disclosure of any document designated as Confidential Information subject to the limitations of Section 5(b). Any party or counsel seeking to use or disclose Confidential Information for any reason other than for purposes of this litigation, including for public disclosure, will not use the documents designated as Confidential Information, but shall instead comply with the requirements set forth under IFOIA to obtain the desired documents from the proper public body. Any party or counsel who submits a request pursuant to IFOIA for a document previously produced during discovery as Confidential Information must provide a copy of the request to all counsel of record for all parties to the submission of the IFOIA request.

*So Ordered.*

Dated:

_____
U.S. District Judge Marvin E. Aspen
U.S. Magistrate Judge Gabriel A. Fuentes

WE SO MOVE and agree to abide by the terms of this Order

WE SO MOVE and agree to abide by the terms of this Order

_____
Signature

_____
Printed Name

_____
Signature

_____
Printed Name

16

Counsel for: _____

Dated: _____

Counsel for: _____

Dated: _____

**ATTACHMENT A**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CASSANDRA WILLIAMS,                    )
                                       )
          Plaintiff,                   )
                                       )
          v.                           )          Civil No. 22-cv-1084
                                       )
THE CITY OF CHICAGO, Illinois, a       )          District Judge Marvin E. Aspen
Municipal corporation, and Chicago Police   )
Commander, JASON E. BROWN             )          Magistrate Judge Gabriel A. Fuentes
                                       )
          Defendants                   )


**ACKNOWLEDGMENT**
**AND**
**AGREEMENT TO BE BOUND**


The undersigned hereby acknowledges that he/she has read the Confidentiality Order dated_____in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the United States District Court for the Northern District of Illinois in matters relating to the Confidentiality Order and understands that the terms of the Confidentiality Order obligate him/her to use materials designated as Confidential Information in accordance with the Order solely for the purposes of the above-captioned action, and not to disclose any such Confidential Information to any other person, firm or concern.

The undersigned acknowledges that violation of the Confidentiality Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer:

Business Address: _____

_____

_____

Date: _____     _____

Signature