**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CASSANDRA WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 22 C 1084 |
| | ) | |
| v. | ) | District Judge Marvin E. Aspen |
| | ) | |
| CITY of CHICAGO and | ) | Magistrate Judge Gabriel A. Fuentes |
| JASON E. BROWN, | ) | |
| | ) | |
| Defendants. | **)** | |

**MEMORANDUM OPINION AND ORDER**

In this civil rights action under 42 U.S.C. § 1983, Plaintiff Cassandra Williams ("Plaintiff") is a Chicago police officer who has sued the City of Chicago ("the City") and her former police superior Jason E. Brown ("Brown") (collectively, "Defendants"), alleging that Brown retaliated against Plaintiff for speaking out about Brown's having assigned Plaintiff and other officers to guard, for six nights, the Chicago city block where Brown lived, during a period of civil unrest the city experienced in the spring of 2020 after the death of George Floyd at the hands of police in Minneapolis, Minnesota. Plaintiff has alleged that Brown committed a constitutional tort by retaliating against Plaintiff for exercising Plaintiff's First Amendment rights, and that Brown violated the Illinois Whistleblower Act, 740 ILCS 174/5 et seq. The City is named in an indemnification count.

The City has withheld from Plaintiff's discovery 107 documents comprising the entirety of the City's Office of Inspector General ("OIG") file of the OIG investigation into the allegations Plaintiff made to the OIG concerning the conduct at the core of her federal lawsuit on the grounds

of privilege.[1]  Plaintiff, in her Third Motion to Compel Discovery ("Motion to Compel"; D.E. 77),

seeks compelled production of these 107 OIG file documents, in this matter before the magistrate

judge on a district court referral including supervision of discovery (D.E. 34).[2]

## ANALYSIS

The City asserts the law enforcement investigatory privilege as a shield against production

of all 107 documents, and as to 17 of the 107 withheld documents, the City asserts additional

privileges, including the attorney-client privilege, the work-product doctrine, and deliberative

process privilege.[3]  Because the instant lawsuit arises under federal question jurisdiction, federal

courts apply the federal common law of evidentiary privileges.  *Hamdan v. Indiana Univ. Health*

---

[1] The Court is not reaching questions over the discoverability of any additional documents which the City may be withholding under privilege claims that have yet to be asserted in any privilege log or that have yet to be the subject of a Local Rule 37.2 conference.  Today's ruling concerns only the 107 documents on the privilege log the City prepared and produced to Plaintiff (D.E. 77-3).  As to the 170 additional documents and 4,679 emails Plaintiff additionally seeks under an argument that the City waived privilege by not supplying Plaintiff with a log, *see* Plaintiff's Reply in Support of Her Third Motion to Compel Discovery ("Reply"; D.E. 95) at 12, the Court declines to apply the waiver doctrine without first determining whether discovery of these documents is relevant and proportional to the needs of the case, *see* Fed. R. Civ. P. 26(b)(1), and the Court in its discretion sees that issue as not yet ripe for decision in the instant motion to compel.

[2] The City's privilege log (Motion to Compel, Exh. C (D.E. 77-3)) failed to specify adequately the information for which privilege protection is sought.  *See* David M. Greenwald & Michele L. Slachetka, 1 Testimonial Privileges § 1.69 (Thomson Reuters 2021 ed.) ("Greenwald & Slachetka") ("A party asserting privilege may not meet its burden through conclusory statements that the materials in question are privileged, but instead must supply sufficient information upon which to make a determination as to each assertion of privilege.").  The Court chose not to find in this particular matter that the City waived its privilege claims as a result of the inadequate log.  *See Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007) ("blanket waiver is not a favored remedy for technical inadequacies in a privilege log").  Instead, the Court relied on the Declaration of Nathaniel Wackman ("Wackman Decl."; D.E. 87-1) to fill some of the informational gaps and exercised its discretion to conduct an *in camera* review to evaluate the privilege claims.  *See Wier v. United Airlines, Inc.*, No. 19 CV 7000, 2021 WL 1517975, at *3 (N.D. Ill. April 16, 2021).

[3] The Court does not reach the City's claim that discovery of certain documents would violate the terms of a protective order in place in another matter before the Court, namely *State of Ill. v. City of Chicago*, No. 17 C 6260 ("the Consent Decree Action"), because the documents the City claims are protected by the Consent Decree Action's protective order are not being ordered to be disclosed based on other asserted privileges.

*N. Hosp., Inc.*, 880 F.3d 416, 421 (7th Cir. 2018); Fed. R. Civ. P. 501. The Seventh Circuit's "general take on privileges" is to "construe [them] narrowly because they are in derogation of the search for truth." *Valero Energy Corp. v. United States*, 569 F.3d 626, 630 (7th Cir. 2009). *See also Raybestos Prod. Co. v. Younger*, 54 F.3d 1234, 1245 (7th Cir. 1995) (the Seventh Circuit "has consistently construed federal and state privilege laws narrowly, giving effect to federal evidentiary requirements that are designed to include, not exclude, probative evidence"). "[C]aution should be especially taken in recognizing a privilege in a federal civil rights action, where any assertion of privilege must overcome the fundamental importance of a law meant to protect citizens from unconstitutional state action." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 451 (N.D. Ill. 2006). "Findings regarding privilege are fact-intensive, case-specific questions that fall within the district court's expertise, and … as is the case with any privilege, the one seeking its protection must carry the burden of showing that it applies." *Valero Energy*, 569 F.3d at 630. Below in Part I, we discuss the law enforcement investigatory privilege, which is the foundation for the Court's decision as to most of the 107 documents subject to the Motion to Compel. Part II briefly summarizes the attorney-client privilege and work-product doctrine, which the Court applied to a few of the withheld documents as to which those privileges were invoked. Part III then undertakes a document-by-document analysis of the applicability of the foregoing privileges to each of the 107 withheld documents.

I. **The Law Enforcement Investigatory Privilege Protects from Civil Discovery Documents As To Which an Interest in Non-Disclosure of Law Enforcement Files Outweighs a Civil Litigant's Need for Their Use in Litigation.**

The Court of Appeals for the D.C. Circuit coined the phrase "law enforcement evidentiary privilege" in addressing a claim of privilege based on the harm to law enforcement efforts which might arise from public disclosure of information in FBI investigatory files that was being gathered

in connection with an investigation of criminal activity which "would tend to reveal law enforcement investigative techniques or sources." *Black v. Sheraton Corp.*, 564 F.2d 531, 541, 545 (D.C. Cir. 1977).[4] This developed into the "law enforcement investigatory privilege," which the Seventh Circuit recognized in *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122 (7th Cir. 1997). In that case, the plaintiffs sought discovery of criminal law enforcement investigatory materials the Department of Justice was holding for use in ongoing criminal investigations, and the Seventh Circuit opined that "there ought to be a pretty strong presumption against lifting the privilege" because it could "force the government to tip its hand to criminal suspects and defendants," and courts should not "be thrust too deeply into the criminal investigative process." *Id.* at 1125. Nevertheless, the Seventh Circuit held that this privilege "can be overridden in appropriate cases by the need for the privileged materials" by "balancing . . . the need of the litigant

---

[4] A few years earlier, a district court in Pennsylvania addressed the government's withholding of police investigation files in a civil rights case under the government's claim of executive privilege. In assessing whether the privilege should be lifted, the court in *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973), created a list of 10 factors to consider in balancing the public interest in the confidentiality of information from a potentially ongoing criminal case against the needs of a civil litigant to obtain data:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Id.* at 344. Although *Black*, 564 F.2d 531, did not mention *Frankenhauser* factors, the D.C. appellate court later referred to them as "illustrative" and "helpful." *See In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988); *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1342 (D.C. Cir. 1984). The Fifth Circuit is the only other appellate court to discuss the *Frankenhauser* factors, *see In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 570 (5th Cir. 2006), but various district courts around the country have cited to the *Frankenhauser* factors with approval, as we note below.

who is seeking privileged investigative materials [] against the harm to the government." *Id*. at 1124-25. *Dellwood Farms* did not delineate the balancing factors to be considered in determining whether the law enforcement investigatory privilege should be lifted, instead leaving this "particularistic and judgmental task . . . to the discretion of the district judge." *Id*. We find that the law enforcement investigatory privilege applies to the OIG file being withheld in this case, and we apply the *Dellwood Farms* balancing to determine as to which documents the privilege must be lifted.

### A. The Law Enforcement Investigatory Privilege Applies to the OIG File Being Withheld in this Case, But Not in Blanket Fashion.

A threshold dispute presented by the Motion to Compel is whether the law enforcement investigatory privilege should also apply broadly to "civil" investigations conducted by a law enforcement agency, such as the OIG's file at issue in this case. Plaintiff contends that the OIG investigation into her allegations here is no more than an "internal employment investigation," to which the law enforcement investigatory privilege does not apply. Motion to Compel at 4. In response, the City argues that the investigatory privilege protects civil as well as criminal law enforcement investigatory files from civil discovery.[5]

---

[5] Notably, the City never explicitly asserts, in its brief or in the Wackman Declaration, that OIG's investigation into Plaintiff's complaint to OIG about Defendant Brown's alleged conduct at issue in this lawsuit is a criminal investigation. Defendant's Response in Opposition to Plaintiff's Third Motion to Compel Discovery ("Opp."; D.E. 87) at 5-7, citing *Rodriguez v. City of Chicago*, 329 F.R.D. 182, 189 (N.D. Ill. 2019). The Wackman Declaration nonetheless makes clear that the OIG's charge under the Chicago Municipal Code ("CMC") includes criminal investigations as well as investigations of employee misconduct; per the CMC, OIG may partner with a law enforcement agency in a joint criminal investigation or may conduct such an investigation on its own and present the case to a criminal prosecutor for the lodging of charges. Wackman Decl. ¶ 10. Nevertheless, for purposes of deciding the Motion to Compel, the Court will presume that the investigation is in fact "civil" and not criminal, as the Court examines the City's arguments as the City has presented them.

### 1. The Law Enforcement Investigatory Privilege's Protection from Civil Discovery Is Not Limited Strictly to the Agency's Criminal Files.

The Court rejects Plaintiff's contention that the law enforcement investigatory privilege cannot apply to the OIG file being withheld in this case because the privilege does not extend to law enforcement civil investigations, such as internal investigations of employee misconduct. The investigative file sought in litigation of a civil antitrust lawsuit in *Dellwood Farms* was the U.S. Department of Justice's criminal investigative file from its celebrated "lysine" price-fixing conspiracy investigation involving Archer Daniels Midland Co.[6]

Writing for the Seventh Circuit in *Dellwood Farms*, Judge Posner opined "that there ought to be a pretty strong presumption against lifting the [law enforcement investigatory] privilege," because "[o]therwise the courts will be thrust too deeply into the *criminal* investigative process," which involve matters "firmly in the executive branch, subject only to such limited judicial intervention as may be necessary to secure constitutional and other recognized legal rights of suspects and defendants." 128 F.3d at 1125 (emphasis added). The *Dellwood Farms* panel added that civil litigants who seek disclosure of law enforcement investigative files should not have "a right to force the government to tip its hand to *criminal* suspects and defendants by disclosing the fruits of the surreptitious (but presumably lawful) surveillance that the FBI conducted." *Id.* (emphasis added). Civil discovery requests that effectively ask district courts to "mediate" between civil litigants' desires to expedite their civil litigation "and the government's conduct of its *criminal* investigation" place such courts outside "a proper judicial role." *Id.* (emphasis added).

The heart of our concern is with the principle that the control of *criminal* investigations is the prerogative of the executive branch, subject to judicial

---

[6] The lysine investigation was enshrined in popular culture by the film *The Informant!* (Warner Bros. 2009), starring Matt Damon.

> intervention only to protect rights – and no rights of the plaintiffs were invaded by
> the government's assertion of its law enforcement investigatory privilege.

*Id*. at 1126 (emphasis added).

*Dellwood Farms* involved a criminal file and concerns about judicial interference in a criminal investigation, but many of the same concerns exist as well with respect to civil discovery of a law enforcement agency's civil investigation. The public and the government agency still could be harmed if certain of the agency's file materials from a civil or employment investigation are disclosed, and courts allowing civil discovery of certain investigative file materials still may be unduly interfering with executive branch functions by doing so. The key to determining the privilege's applicability lies in examining the degree to which withheld documents may trigger those concerns, and the nature of the civil litigant's need for the materials. As we explain further below, it is this balancing of interests – and not that an investigation is purely civil in nature – that is the decisive or revelatory "thing" concerning this privilege. *See* William Shakespeare, Hamlet, Prince of Denmark, Act II, Scene II (ca. 1599-1601) ("The play's the thing Wherein I'll catch the conscience of the King.") (reprinted in Mortimer Adler, Great Books of the Western World, Vol. 27 at 46 (Encyclopaedia Britannica 1952).

### 2. The Law Enforcement Investigatory Privilege's Coverage of Civil Investigative Files Is Not a Blanket Protection Against Civil Discovery of All Such Files Even If an Investigation Is Active and Ongoing.

The Court also rejects the City's proposed approach barring all discovery of all OIG civil investigatory files in blanket fashion. Blanket protection is not justified on grounds that a law enforcement agency conducted the investigation and that the investigation is ongoing. Although the privilege applies to civil investigatory materials, the City's assertion that *Dellwood Farms* established a "presumption" that here precludes all of the OIG files, Opp. at 4-7, goes too far.

*Dellwood Farms* did not suggest that a blanket protection should apply to all agency files even from a criminal investigation. Instead, *Dellwood Farms* held that disclosure of materials in the face of a law enforcement investigatory privilege claim depends on a "balancing" of "the need of the litigant" against "the harm to the government if the privilege is lifted." *Id.* at 1125. Nothing about this aspect of *Dellwood Farms* instructs us that the required balancing should be anything but individualized, and such an instruction would run counter to the Seventh Circuit's rule that privileges should be "construe[d] narrowly," *Valero Energy*, 569 F.3d at 630, and that a "claim of privilege cannot be a blanket claim; it must be made and sustained on a question-by-question or document-by-document basis." *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (internal citations and quotations omitted) (applying rule against blanket claims of privilege to attorney-client privilege). *See also LKQ Corp. v. Kia Motors Am., Inc*., No. 21 C 3166, 2023 WL 3200236, at *4 (N.D. Ill. May 2, 2023) (applying rule against blanket privilege claims to assertions of work-product protection).

The fact that, according to the City, the OIG investigation is ongoing or incomplete does not change the rule against blanket application of the privilege. Although the City argues that its confidentiality interests in the OIG investigation would be harmed irreparably by discovery in that discovery will make the materials "public," Opp. at 8, they will not be made "public" by discovery. Unfiled discovery is not public, and even filed discovery is subject to sealing upon a sufficient showing under the applicable Seventh Circuit law. *See Baxter Int'l, Inc. v. Abbott Labs*., 297 F.3d 544, 545-46 (7th Cir. 2002). Nor will the withheld documents' "use[] in pending litigation," Opp. at 8, categorically render them undiscoverable by the law enforcement investigatory privilege; *Dellwood Farms* blocks civil discovery only if the balancing of interests comes out against discoverability. The ongoing character of an investigation is just one factor in the balancing.

8

The authorities relied on by the City for heightening the *Dellwood Farms* presumption against civil discovery of materials from ongoing investigations do not hold differently. *See* Opp. at 7, citing *Clark v. Powe*, Nos. 07 C 1616, 07 C 5251, 2008 WL 4686151 (N.D. Ill. May 30, 2008), *Myhre v. Ditzler*, No. 05 C 50074, 2006 WL 8462189 (N.D. Ill. Feb. 21, 2006), and *Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 320204 (N.D. Ill. Jan. 31, 2011). In *Clark*, the district court cited *Dellwood Farms* and found that amid an ongoing criminal investigation of a suspect whose identity was unknown to the civil litigant seeking to compel disclosure, the suspect's identity was properly withheld under the law enforcement investigatory privilege. 2008 WL 4686151, *1-3. In *Myhre*, the magistrate judge found that the balancing of interests weighed against civil discovery of a broad array of police investigative files whose disclosure threatened an ongoing criminal prosecution then pending in state court. 2006 WL 8462189, at *3-4. And in *Hill*, the district court cited *Dellwood Farms* and undertook an *in camera* review of "cold case" police files including the identities of two new murder suspects identified through DNA analysis long after the plaintiff alleged he was wrongfully prosecuted in the case; the court recognized the value of this information to plaintiff but held it to be protected by the law enforcement investigatory privilege in view of the "serious public safety issues" that could result from inadvertent public disclosure of the information. 2011 WL 320204, at *1-2.

In *Clark*, *Myhre* and *Hill*, civil discovery of files from ongoing criminal investigations posed specific threats of harm to those investigations, as opposed to the City's more generalized and somewhat speculative concern here that "disclosure of an active investigation file would be more likely to compromise the integrity of the investigation due to potential disclosure of witness identities and other information that could alter the final outcome of the investigation." Opp. at 7. As for the City's further contention that in ongoing investigations, "[t]he OIG's employees must

be allowed to have frank communications without fear that their honest thoughts and mental impressions will be made public to private litigants," *id*. at 8-9, the Court agrees that this valid concern lies at the root of "executive privilege" and of the evolution of the law enforcement investigatory privilege. But the Seventh Circuit's required balancing of interests addresses that concern, providing a mechanism for protecting against that sort of damage to the public interest, while allowing for consideration of a civil litigant's need for information the law enforcement agency wants to protect as privileged. *See Dellwood Farms*, 128 F.3d at 1125. *Clark*, *Myhre* and *Hill* stand for including the ongoing nature of an investigation in the interest balancing discussed further in Part B. below, and not for blanket protection of file materials simply because an investigation is ongoing.

### B. The Scope of the Law Enforcement Investigatory Privilege's Protection of Law Enforcement Agency Investigative Documents from Discovery Depends on a Balancing of Interests.

Although the Seventh Circuit has not employed the 10-factor balancing test in *Frankenhauser*, *see supra* n.4, a few courts in this district have nevertheless discussed all 10 factors (without citing to *Frankenhauser*), while other courts focused on particular factors (that are subsumed within *Frankenhauser*) based on the importance to the case before them to determine whether the law enforcement investigatory privilege should be overcome.

In *Lewis v. City of Chicago*, No. 04 C 3904, 2004 WL 2608302, at *1 (N.D. Ill. Nov. 16, 2004), for example, the court held that the law enforcement investigatory privilege asserted by the City "must yield in this case to the plaintiff's need for disclosure of the materials contained" in the Complaint Register ("CR") file maintained by the City's Office of Professional Standards, where the CR file "may contain evidence probative of plaintiff's civil rights claim under Section 1983." Similarly, in *Santiago v. City of Chicago*, No. 09 C 3137, 2010 WL 1257780, at *4 (N.D. Ill. Mar.

26, 2010), the court determined that the law enforcement investigatory privilege was overcome by the civil rights plaintiff's need for the information in the Chicago Police Department's internal investigation CR files; the court also noted that the City's concerns could be addressed by an appropriate protective order. In *Rodriguez*, the court held that the law enforcement investigatory privilege did not apply to certain documents from the City's Independent Police Review Authority and Civilian Office of Police Accountability because the City did "not identify a specific harm beyond a concern that the withheld materials might influence future witness and officer statements to investigators if they are disseminated," and they "reflect[ed] purely factual information and do not appear to reveal any confidential investigatory techniques or to discuss any on-going criminal investigation that might otherwise justify the claim of privilege." 329 F.R.D. at 189.

By contrast, the court in *Jones v. Brennan*, No. 18 C 1213, 2019 WL 2287986, at *4 (N.D. Ill. May 29, 2019), found that the information at issue was irrelevant to the plaintiff's case and allowed the government agency to withhold it. Similarly, in *Kampinen v. Individuals of Chicago Police Dep't*, No. 00 C 5867, 2002 WL 238443, at *4 (N.D. Ill. Feb. 19, 2002), the court allowed materials to be withheld under the law enforcement investigatory privilege where the court's *in camera* review revealed that, the information was "inextricably intertwined with confidential [Secret Service] Agency functions," and "it ha[d] little bearing upon [the plaintiff's] constitutional claims." In addition, in *Doe v. Hudgins*, 175 F.R.D. 511, 515 (N.D. Ill. 1997), the court allowed the underlying files to be withheld primarily because there were criminal proceedings pending against the defendant.[7]

---

[7] The balancing test applied by courts in this district is consistent with the approach other federal courts within the Seventh Circuit have taken. For example, in *Anderson v. Marion County Sheriff's Dep't*, 220 F.R.D. 555, 564-67 (S.D. Ind. 2004), the court allowed discovery of a law enforcement agency's civil internal investigation file after applying the *Frankenhauser* factors and emphasizing that "[f]irst and foremost" the case did not involve a criminal investigation, but rather "an investigation relating to non-criminal disciplinary matters between employees," and that "the importance of the information to the

The Court will undertake the *Dellwood Farms* balancing as to the 107 withheld documents in Part

III below, with a few exceptions in which the Court had to apply the attorney-client privilege,

work-product doctrine, or deliberative process privilege.  These protections are discussed briefly

below in Part II.

## II.    The Attorney-Client Privilege and Work-Product Doctrine Provide Other Avenues for Protection Against Civil Discovery of Certain Materials.

The City also has invoked the attorney-client privilege, the work-product doctrine, and the

deliberative process privilege as to a few of the 107 withheld documents. "The attorney-client

privilege protects communications made in confidence by a client and a client's employees to an

attorney, acting as an attorney, for the purpose of obtaining legal advice."  *Sandra T.E. v. South

Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010), citing *Upjohn Co. v. United States*, 449

U.S. 383, 394-99 (1981), and *Trammel v. United States*, 445 U.S. 40, 51 (1980).  The work-product

doctrine "is distinct from and broader than the attorney-client privilege." *Appleton Papers, Inc. v.

E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012), quoting *United States v. Nobles*, 422 U.S. 225, 238

n. 11 (1974).  It protects from disclosure "documents prepared by attorneys in anticipation of

litigation for the purpose of analyzing and preparing a client's case," as well as "an attorney's

thought processes and mental impressions," in order to "limit[] the circumstances in which

attorneys may piggyback on the fact-finding investigation of their more diligent counterparts."

*Sandra T.E.*, 600 F.3d at 618, 621-22.   "The Seventh Circuit has explained that the test for

'anticipation of litigation' is 'whether, in light of the nature of the document and the factual

situation in the particular case, the document can be fairly said to have been prepared or obtained

---

plaintiff's case—[which] has been described by courts as the most crucial" weighed in favor of disclosure
of the material.  *Id*. at 564, 567. *See also Palmer v. City of Decatur*, No. 17-CV-3268, 2019 WL 13156163,
at *4 (N.D. Ill. July 22, 2019) ("In analyzing an investigatory privilege claim, the court, keeping in mind
that there is a strong presumption that the privilege applies, balances the need of the litigant seeking the
privileged materials against the harm to the government if the privilege is lifted.").

*because* of the prospect of litigation.'" *Hankins v. Alpha Kappa Alpha Sorority, Inc*., 619 F. Supp. 3d 828, 837 (N.D. Ill. 2021), quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc*., 709 F.2d 1109, 1118-19 (7th Cir. 1983) (citing 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024 (3d ed. 2021)) (emphasis in *Binks*).  Work-product protection does not apply to "materials prepared in the ordinary course of business – even if prepared at a time when litigation was reasonably anticipated" or "merely because there is a remote prospect of future litigation" or because litigation does eventually ensue.  *Hankins*, 619 F. Supp. 3d at 837 (internal citations and quotations omitted). As for documents sought to be withheld under the deliberative process privilege, the Court in Part III is permitting them to be withheld based on other applicable privileges.  As a result, the Court does not reach the deliberative process privilege claims at all.[8]

III.    **The Court's Balancing of Interests As to the 107 Withheld Documents Results in the Motion To Compel Being Granted in Part and Denied in Part**.

        The Court's approach to applying the balancing of interests to determine whether the 107 withheld documents are covered by the relevant, asserted privileges in this case was guided not only by *Dellwood Farms*, but also by the federal courts' more general prescription that evidentiary privileges are to be construed narrowly.  The City at one point suggests that the law enforcement investigatory privilege bars discovery unless Plaintiff can show a "compelling" justification for allowing the discovery.  *See* Opp. at 8.  The Court disagrees.  The burden to establish the privilege's coverage is on the City, and not Plaintiff, *Shaffer v. American Med. Ass'n*, 662 F.3d 439, 446 (7th Cir. 2011), and Plaintiff's sole access to the content of the 107 withheld documents here is through

---

[8] The Court therefore does not reach Plaintiff's argument that the deliberative process privilege may not be claimed by state and municipal entities in a lawsuit arising under federal question jurisdiction.  See Motion to Compel at 10, citing *Murdock v. City of Chicago*, 565 F. Supp. 3d 1037, 1043 (N.D. Ill. 2021).

a privilege log that the Court has found wanting. *Dellwood Farms* and the cases applying it allow discovery if a civil litigant's need for the materials outweighs the public and agency interest against discovery, and not upon the civil litigant showing a "compelling" justification or need.

The Court agreed with the City that certain other factors weighed in the City's favor under *Dellwood Farms*, and the Court balanced those factors against Plaintiff's need for the materials. These factors include the ongoing and active nature of the OIG investigation. They also include a form of baseline interest, on the part of the City and OIG, in the confidentiality of every document in the OIG investigatory file. In addition to the OIG's interest in non-disclosure of its investigators' thought processes in choosing which documents to include in the investigatory file, or which documents the investigators chose to "follow up" on, OIG has a more generalized interest in the overall confidentiality of the file, stemming from the confidentiality of OIG investigations and file documents per the Chicago Municipal Code and Illinois statutes. *See* Wackman Decl. ¶¶ 13-16 (reciting Chicago Municipal Code and Illinois statutory provisions concerning the confidentiality of OIG investigations). This statutory baseline interest in confidentiality is not a zero in the *Dellwood Farms* balancing, and where Plaintiff's need for a particular OIG file document is zero or is extremely low, the City has carried its burden on the law enforcement investigatory privilege. In baseball, the tie goes to the runner, but the Court is not finding any ties here. In each and every instance of *Dellwood Farms* balancing undertaken as to the 107 documents, the Court weighed the respective interests, with the privilege applying wherever the City's (and the public's) interest in keeping the investigatory file documents confidential outweighed Plaintiff's need for them in the litigation. Plaintiff's need was substantial enough to outweigh those confidentiality interests, so that the City did not carry its burden, with respect to witness interview transcripts and summary interview memoranda, but not with respect to many or

all routine investigative materials in which investigators or OIG attorneys documented their receipt of certain materials, internally requested those materials from other City departments, summoned City employees for interviews, or communicated with City employees' counsel to schedule the interviews or to discuss issues such as transcript errata. Plaintiff's need for these more workaday investigatory documents was very low or non-existent, so the City's baseline interest in the confidentiality of the OIG investigative files weighed in favor of the law enforcement investigatory privilege's protection of those documents, and thus the City carried its burden, even as to publicly available materials, such as news accounts or court documents that found their way into OIG's files without analytical staff commentary, annotation or discussion.

The document-by-document balancing analysis required by *Dellwood Farms* is set forth below.

*Document No. 1.* The Court agrees that this "Case Relationship Report" falls within the Court's limited application of the law enforcement investigatory privilege because it maps and documents OIG's investigative planning and steps relative to its investigation of Plaintiff's OIG complaint, which she lodged before she filed suit in this action. *See* Wackman Decl. ¶ 41. The City claims the law enforcement investigatory privilege claim as to certain portions of the document, namely the report's discussion of conversations between Plaintiff's counsel (Thomas Needham) and OIG staff about access to OIG file materials. Plaintiff's need for the recitation of a conversation her counsel had with OIG is minimal, if not zero. Because Plaintiff's need is minimal and disclosure of information OIG chose to place in its investigatory plan is, in some small measure, a disclosure of OIG investigative thought processes, the Court finds that the *Dellwood Farms* balancing favors applying the law enforcement investigatory privilege to deny the Motion to Compel as to Document No. 1. The City also invokes the work-product doctrine

and deliberate process privilege as to this document, but the Court does not reach those claims, as the document may be withheld under the law enforcement investigatory privilege.

*Document No. 2*.  The City claims law enforcement investigatory privilege over this OIG anonymous complaint report, which recites the content of the anonymous complaint about events largely overlapping with the core of Plaintiff's allegations in the lawsuit.  With this document being a report of an anonymous complaint that contains little or nothing that Plaintiff has not already alleged, or that she already knows she has alleged, the Court sees Plaintiff's need for this document as extremely low or nil.  Moreover, although disclosure of this document has a low potential to harm OIG, its investigations, or the public, disclosure still would mean the transmittal of an anonymous complaint to third parties, in contravention of OIG's baseline interest in the confidentiality of its investigative files under the CMC.  For these reasons, the Court denies the Motion to Compel as to Document No. 2 under the *Dellwood Farms* balancing.

*Document No. 3*.  The City's claim of law enforcement investigatory privilege over the OIG report of its March 31, 2021, interview of Plaintiff is not sustainable because the *Dellwood Farms* balancing favors discovery.  This report is not of an anonymous complaint.  It names Plaintiff and describes her complaint against Defendant Brown in a way that, again, tracks Plaintiff's civil complaint in the lawsuit and thus has zero potential to impede the OIG's investigative function in any way; moreover, Plaintiff has a strong interest in discovering records within the City's possession concerning her own prior statements, which have the potential to be used to impeach her.  The Motion to Compel is granted as to this document.

*Document No. 4*.  The Motion to Compel is denied as to this short, one-paragraph OIG investigative report reflecting the transmission of certain information by Plaintiff's counsel, Mr. Needham, to OIG in support of Plaintiff's OIG complaint.  The City's interest in preserving the

confidentiality of this external communication in the OIG file is low, but the *in camera* review indicated no articulable need by Plaintiff for this document.

*Document No. 5*. This OIG interview report summarizes a somewhat more detailed OIG interview of Plaintiff on May 21, 2021, in the presence of Mr. Needham and at his office. The Motion to Compel is granted as to this document for the same reasons stated above as to Document No. 3.

*Document Nos. 6, 7*. The Motion to Compel is denied as to these two brief OIG reports describing investigative steps OIG took early in its investigation. Discovery of these materials would disclose OIG's investigative steps and methodology in a way that outweighs Plaintiff's relatively low need for this information, according to the Court's judgment on *in camera* review. The Court is permitting these records to be withheld without reaching the City's further claim, as to Document No. 7, that it cannot be produced in this litigation under the terms of a protective order in the Consent Decree Action.

*Document Nos. 8-14*. The Motion to Compel is denied as to these brief OIG reports that are little more than notes to the OIG files documenting the fact that various witness interviews were conducted or that various documentary information was obtained as a part of the OIG investigation. Discovery of these materials would disclose OIG's investigative steps and methodology in a way that, although minimal, outweighs Plaintiff's even lesser need for this information, which in the Court's judgment is not particularly useful or revealing, or which is duplicative of other information Plaintiff will receive from the OIG file, such as interview reports and transcripts.

*Document No. 15*. The OIG's file note indicating another external communication with Plaintiff's counsel, and including transmittal to OIG of a publicly available document, minimally

includes investigative mental impressions. Plaintiff's need for this document is zero because she already has it, and her knowledge of OIG's inclusion of the document in its file is of low or no value to her. The Motion to Compel is denied as to this document.

*Document Nos. 16-25*. The Motion to Compel is denied as to these documents, which are similar in character to Document Nos. 9-14 and may be withheld under the law enforcement investigatory privilege for the same reasons stated above with reference to Document Nos. 9-14.

*Document No. 26*. This document is a copy of a publicly available news report. Allowing a document like this to be withheld under the law enforcement investigative privilege is highly counterintuitive. Privilege claims are not ordinarily sustainable as to documents that have been exposed to the wider world and are accessible to the wider world. But Plaintiff has virtually zero need for this document. Comparing Plaintiff's need against the OIG's baseline interest in the statutory confidentiality of all of its investigative files, the OIG's interest in confidentiality – even in something as innocuous as a news report – prevails in the *Dellwood Farms* balancing. To hold otherwise would be to allow a civil litigant to thumb through a law enforcement investigatory file in discovery and obtain documents for which the litigant has no need at all. The OIG also articulated an interest in preventing disclosure of this document because such disclosure would reveal "what information in the public domain the OIG followed up on as it conducted its investigation." Wackman Decl. ¶ 66. As dubious as that interest may be, it is greater than zero. The Motion to Compel is denied as to Document No. 26.

*Document No. 27*. This document is an OIG file note documenting OIG's having obtained a copy of a publicly available court document. The Motion to Compel is denied for the same reasons the Court denied it as to Document No. 15.

*Document No. 28*.  This report concerning information OIG sought and was unable to obtain about the circumstances or communications surrounding Defendant Brown's demotion presents a close call, because the persons and avenues the OIG chose to pursue to seek this information represent investigative choices and methods.  Nonetheless, on *in camera* review, the Court applies the *Dellwood Farms* balancing to grant the Motion to Compel as to this document, because in the Court's judgment, the absence of information on this subject (or the OIG's inability to obtain it from these sources) has a significant enough relevance to the claims and defenses in this case so that Plaintiff's need for it outweighs the OIG's interest in withholding it.

*Document No. 29*.  This document presents another close call, but one falling in favor of non-disclosure.  The OIG file report documents the fact that OIG obtained certain information from Brown through his attorney, and it reflects investigative steps and methods; the Court did not see Plaintiff's need for this particular information as outweighing OIG's interest in the confidentiality of those steps and methods.  The Motion to Compel is denied as to this document.

*Document No. 30*.  The Motion to Compel is granted as to this OIG report documenting the fact that OIG interviewed Defendant Brown on May 17, 2022.  The fact that OIG would interview Brown is no great investigatory revelation, and nor is the content of the document making a record of the fact that the interview took place.  Plaintiff's need for the document is minimal but enough to justify discovery.

*Document Nos. 31-32*.  The Motion to Compel is denied as to these OIG file notes documenting the fact that certain other interviews took place, as they reflect the OIG's decisions and choices as to whom to interview and when, in a manner that outweighs Plaintiff's very low need for information concerning the mere fact that these interviews took place.

19

*Document No. 33.* This email chain includes external communications between the OIG representatives and counsel, James McKay, for several of the police officers being interviewed, about the scheduling of interviews. Disclosure of this document may reveal the timing of certain interviews, as well as the identity of persons being interviewed, but it also reveals details of the form and manner of OIG's communication with counsel for interview subjects. OIG's need for confidentiality of this information is relatively low, but it is significant enough to outweigh Plaintiff's even lesser need for this document, which contains no substantive information. The Motion to Compel is denied as to this document.

*Document Nos. 34-38.* These communications involve purported transcript errors communicated to OIG by attorney McKay in his capacity as legal representative for certain interviewed witnesses (and Document No. 39 is an internal OIG communication on that subject), and the sending of video interview invitations to certain witnesses. They are non-substantive external communications, but they were generated in the context of OIG's investigative process, and disclosure of them discloses more of the OIG's confidential investigative milieu. With Plaintiff's need for these documents at little or none, the Motion to Compel is denied as to these documents.

*Document No. 39.* This OIG file memorandum is addressed to two OIG attorneys (Inspector General Deborah Witzburg and Deputy Inspector General William Marback) and is signed by an OIG investigator whom the OIG identifies as an attorney (Wackman Decl. ¶ 79). The document does not seek legal advice explicitly, as it describes "factual information on an issue with four transcripts," as the City stated in the privilege log. *Id.* The Court does not agree with OIG that the document is attorney-client privileged because "potential legal implications for OIG's investigation and any eventual disciplinary proceedings or appeal from a disciplinary decision" so

that the memo "was drafted to provide legal advice," *id.* but the Court on *in camera* review sees the document as a request to obtain legal advice from the addresses, who were OIG lawyers and included the OIG herself. The Motion to Compel is denied as to Document No. 39, which is protected by the attorney-client privilege. The Court does not reach the other privilege claims asserted by the City as to this document.

*Document Nos. 40-44.* An email from Mr. Needham, as Plaintiff's counsel, to OIG attaching two sets of text messages Plaintiff believed to be relevant to the OIG investigation, and the two sets of messages, are contained in the first three of these five documents. The latter two documents are Mr. Needham's email to OIG attaching photos and a video that Plaintiff shared with OIG in support of her OIG complaint. Plaintiff's need for these materials is low because she provided them to OIG through her counsel. Plaintiff no doubt already has the texts or has seen them. In the absence of any clear need of Plaintiff for these documents, the Court sees the OIG's minimal interest in the confidentiality of its files, and of its choices as to what to include in those files, as outweighing Plaintiff's need, so the Motion to Compel is denied as to these five documents under the *Dellwood Farms* balancing.

*Document No. 45.* This document is Plaintiff's personnel file. The fact that this file is found within OIG's investigative files may be of some methodological significance, but on balance, the Court did not see any reason why the law enforcement investigatory privilege ought to block Plaintiff's discovery of the contents of her own personnel file. The Motion to Compel is granted as to this document.

*Document No. 46.* The OIG's formal notification of interview, provided to city employees who will be interviewed, is much like a notice of deposition, but the Court could not see any need

for discovery, by Plaintiff, of these forms and thus denies the Motion to Compel as to this document.

*Document Nos. 47-49.* These documents are among the most important, for Plaintiff, in the OIG investigative file. They are the sworn transcripts of interviews of three witnesses whom Plaintiff initially identified, in her March 31, 2021, interview with OIG (as reflected in Document No. 3), as being among the six police officers (other than Plaintiff) on the watch team allegedly assigned to a post at Defendant Brown's home in June 2020. The City claims that these documents must be withheld under the law enforcement investigatory privilege because disclosure to Plaintiff under a protective order would reveal "the complete substance of their testimony" and would allow these or other witnesses to shape or shade their testimony "by knowing what testimony is available to OIG to corroborate or contradict their testimony." Wackman Decl. ¶¶ 87-89. But that assertion does not carry the day on the City's effort to invoke the law enforcement investigatory privilege as a shield against discovery of these transcripts. These transcripts are of OIG interviews of Chicago Police Department members who have a contractual right to receive the transcripts within 72 hours after OIG receives them. *Id.* ¶ 32. The fact that the interviewed officers receive these transcripts does not operate as a "waiver" of the law enforcement investigatory privilege, as the OIG fears, *id.* ¶ 33, but it does bear on the balancing undertaken by the Court in considering the privilege claim under *Dellwood Farms*. Witnesses who received these transcripts, and who in some cases had their counsel submit errata to OIG to correct purported errors in the transcripts, can be presumed to have retained possession of them and to know full well what prior testimony OIG has of theirs. Denying Plaintiff discovery of these transcripts would deny Plaintiff the prior sworn statements by persons whose accounts are integral to her claims in this case, as these witnesses allegedly were placed on the same June 2020 detail at Brown's home as was Plaintiff.

Plaintiff's need for the transcripts is therefore very high. Additionally, the Court is unpersuaded that the *Dellwood Farms* balancing should come out in favor of withholding these transcripts under the law enforcement investigatory privilege based on the OIG's contention that their discovery in this matter under a protective order would reveal the information they provided, "including the names of other persons with knowledge," and would reveal "how OIG has sequenced interviews and investigative steps OIG has taken." *Id.* ¶¶ 87-89. Civil discovery of these transcripts may reveal all of those things, but again, those revelations ought to shock no one – OIG set out to interview the other officers who, according to what Plaintiff herself told OIG, were placed on the June 2020 detail, and to the degree that their transcripts might reveal the names of other persons with knowledge, that is the very nature of federal civil discovery. Finally, the City correctly notes that the police collective bargaining agreement requires the statements of a police officer to be disclosed only to that individual police officer, but disclosure to Plaintiff of the statements in civil discovery, even under a protective order, creates the possibility that information from various witness statements could find their way to other witnesses during the discovery process. Opp. at 6; Wackman Decl. ¶ 29. The City argues that such disclosure might "chill" the willingness of witnesses to cooperate with or speak to OIG in the future, id., but the degree to which the City's employees might be "chilled" in cooperating based on civil discovery of their statements is too speculative to outweigh Plaintiff's need for the documents. Moreover, as OIG reminds us, a City employee's cooperation with OIG is hardly a voluntary endeavor: "All City employees have a duty to cooperate with OIG, and OIG regularly compels interviews of City employees …. Failure to cooperate with an OIG investigation by a City employee is also grounds for discharge or other discipline." Wackman Decl. ¶ 11. Admittedly, an employee's cooperation can take different forms, some less forthcoming or less helpful to the investigation than others. But as to these and

other witness statements or transcripts referenced further below, Plaintiff's need for the information outweighs the City's assertions, per the law enforcement investigatory privilege, about potential harms visited on OIG or on the public interest by civil discovery of these materials. The Motion to Compel is granted as to these transcripts.

*Document No. 50.* This document is a report by the OIG's Center for Information Technology & Analytics analyzing Chicago Police Department data to answer three questions with respect to police deployment at Brown's home city block during the relevant period of May 31 to June 10, 2020. The Court views this data analysis, and the means OIG used to gather the data, as law enforcement methodology that ought to be protected under the law enforcement investigatory privilege. Moreover, Plaintiff's need for the data analysis is low because, if she has not already, she may simply pose these three questions – which are obvious, although the Court is deliberately omitting them from this discussion in view of the applicability of the privilege – as interrogatories that defendants, or at least the City, is bound to answer, knowing of course that OIG as a city agency previously gathered it through the CITA process. The details of the CITA process are not needed by Plaintiff, who has other access to the results of the analysis through ordinary discovery requests. Having denied the Motion to Compel based on the law enforcement investigatory privilege, the Court does not reach the City's deliberative process privilege claim as to this document.

*Document No. 51.* This document consists of several documents. The attorney-client privilege supports withholding the first one, an internal OIG email from OIG General Counsel Wackman to OIG investigators about the nature and content of the Police Department's June 2, 2020 "action plan." The document comes very close to being non-privileged for relating no more than underlying facts, but a portion of it does include a comment by attorney Wackman to the staff

concerning how the action plan might be analyzed or interpreted.  That is enough for the Court to deem the cover email from Mr. Wackman attorney-client privileged.  The remainder of the document consists of a Police Department action plan and other planning memoranda.  The law enforcement investigatory privilege applies to these documents and shields them from discovery upon the *in camera* review and interest balancing.  The Court's *in camera* review showed that the planning documents went into great detail about the Chicago Police Department's plans to deal with protests and demonstrations anticipated in the city after the death of George Floyd, including what resources would be allocated.  Plaintiff may well find this information useful as a part of her effort to prove that deploying her to Defendant Brown's home was contrary to the Police Department's priorities at the time, but that need does not outweigh the very substantial interest, not so much by OIG but by the City and its Police Department, in being able to formulate effective actions plans to deal with planned public unrest without having to be concerned that the plans will be disclosed in federal discovery stemming from lawsuits not about the plans themselves, but about how one supervisory officer chose to deploy his subordinates, or about allegations that he retaliated against Plaintiff for having discussed the deployment with third parties.  The Motion to Compel is thus denied as to the documents contained in Document No. 51 for the foregoing reasons, without the Court reaching the other grounds asserted by the City for protection from discovery.

*Document Nos. 52, 53.*  These documents are document requests, on formal OIG letterhead, from the OIG to two city departments.  The Court could not easily identify any significant need by the Plaintiff for these documents, which are internal to the City and which represent investigative measures and methods to a sufficient degree to sustain the City's claim of law enforcement investigatory privilege.  The Motion to Compel is denied as to these documents.

*Document Nos. 54, 55*.  These documents are similar in form and character to Document No. 46, and the Motion to Compel as to this document is denied for same reasons the Court denied it as to Document No. 46.

*Document No. 56*.  This document consists of a short email exchange between the OIG and Plaintiff's counsel Needham, attaching the civil complaint filed in this action.  For the same reasons the Court stated above as to Document No. 15, the Motion to Compel is denied as to this document.

*Document Nos. 57, 58*.  These documents are similar in form and character to Document No. 46, and the Motion to Compel as to these documents is denied for the same reasons the Court denied it as to Document No. 46.

*Document No. 59*.  The Court could not determine if this document is a non-identical copy of the Plaintiff's personnel file in Document No. 45, but like that document, it related entirely to Plaintiff, and the OIG has identified it as a personnel file.  Wackman Decl. ¶ 99.  The Motion to Compel is granted as to this document for the same reasons the Court granted the Motion as to Document No. 45.

*Document No. 60*.  This document consists of a set of Police Department reports supplied to the OIG in response to a document request OIG made to the Department.  In the Court's view on *in camera* review, the first several pages of the document contain the form and manner of OIG document requests in a manner that sufficiently triggers the law enforcement investigatory privilege over means and methods.  The Court denies the Motion to Compel as to those pages and grants it only as to the last page (Bates number 506),[9] which is a substantive Police Department submission of information to OIG about the absence of certain law enforcement records

---

[9] The four-digit references to Bates pages are a shortened version of the longer Bates ranges, which are stated for the 107 withheld documents as OIG-22-cv-1084-0001-1232.

(specifically from the Department's Narcotics Division) about police deployments related to the George Floyd protests. Defendant Brown, as the then-commander of the Narcotics Division, is one of the signers of this February 28, 2022, document. The Court sees Plaintiff as having a need for the information contained in this document, so she might be better able to explore in discovery the Narcotics Division's inability to produce such documents. Plaintiff's need for this portion of the document outweighs the law enforcement interest in non-disclosure under the *Dellwood Farms* balancing.

*Document No. 61*. Other than the first two pages, which consist of document-request-type communications that the Court has held to be within the law enforcement investigatory privilege and not within Plaintiff's needs in this case, this document is a "mobilization check-in" list apparently of Narcotics Division police personnel who "checked" in as mobilized for duty during the George Floyd protests as of June 2, 2020. OIG's boilerplate recitation that discovery of this document would reveal information OIG obtained during its investigation and/or investigative steps and processes (Wackman Decl. ¶ 101) does not outweigh, under *Dellwood Farms*, Plaintiff's need for this document, insofar as it may reveal which Narcotics Division members were deployed to the Floyd protests, as opposed to the detail at Defendant Brown's house, in June 2020. Accordingly, the Motion to Compel is granted as to Bates pages 509-529 and denied as to the remainder of this document.

*Document No. 62*. This document appears to contain Police Department disciplinary records concerning Plaintiff and Defendant Brown. These types of records have been the subject of extensive litigation in this matter, and the City previously has been ordered to produce them, or records substantially of their character. Because Plaintiff already has access to these CR files from other sources, Plaintiff's need for Document No. 62 is low, and it is outweighed by the City's

interest in protecting its investigatory methods as they might be revealed by the version of the CR files contained in the OIG file of its investigation into Plaintiff's OIG complaint about Brown. The Motion to Compel is denied as to Document No. 62.

*Document No. 63-65*. These documents are similar in form and character to Document No. 46, and the Motion to Compel as to these documents is denied for the same reasons the Court denied it as to Document No. 46.

*Document No. 66-68*. These are additional transcripts from two more police officers whom Plaintiff said were part of the June 2020 detail at Brown's home, and a third transcript (Document No. 68) from a police officer who was not himself detailed to Defendant Brown's house, or at least was not alleged to have been so deployed, but who was transferred from the Narcotics Division to a midnight shift at the 11th Police District, after having been part of various discussions among officers about the Brown detail after-the-fact and after having raised concerns about it himself within the Police Department including with Brown. The Motion is granted as to these transcripts, for the same reasons the Court granted it as to Document Nos. 47-49. In addition, although the witness in Document No. 68 was not himself detailed or alleged to have been detailed to Defendant Brown's house, this officer's allegations of like retaliation are highly relevant to this case for purposes of the *Dellwood Farms* balancing.

*Document Nos. 69-71*. These documents are similar in form and character to Document No. 46, and the Motion to Compel as to this document is denied for the same reasons the Court denied it as to Document No. 46.

*Document No. 72*. This transcript of OIG's interview with Defendant Brown's former administrative assistant, an officer not alleged to have been deployed to Brown's home in June 2020, has a lesser relevance to the matter than do the other transcripts in the OIG file, but the

Court's *in camera* review of this transcript confirms that Plaintiff's need for this weighs in favor of discovery, so the Motion to Compel is granted as to this document, for the same reasons the Court granted the Motion as to Document Nos. 47-49.

*Document No. 73*. This document is a publicly available news report, and the Motion to Compel is denied for the same reasons as the Court denied it with respect to Document No. 26.

*Document No. 74*. This document is similar in form and character to Document Nos. 52 and 53, and the Motion to Compel as to this document is denied for the same reasons the Court denied it as to Document Nos. 52 and 53.

*Document No. 75*. This document is a publicly available court document, and the Motion to Compel is denied as to this document for the same reasons the Court denied it as to Document No. 27, the OIG file note about acquisition of a publicly available document for inclusion in the investigative file. Both documents represent the content of the OIG file, and the OIG's baseline interest in the confidentiality of its file outweighed Plaintiff's need for the documents, as that need was zero.

*Document No. 76*. Aside from the first page, a Police Department communication similar in character to Document Nos. 52 and 53, as to which the Court has denied the Motion, this document contains the substantive responses of members of the Police Superintendent's office and other Chicago police executive-level personnel reflecting that they possessed only scant documents in their files concerning Defendant Brown's change of assignment from commander of the Narcotics Division to the position of lieutenant in the 9th Police District in May 2022. The Motion is granted as to all but the first page of this document, for the same reasons the Court granted the Motion to Compel as to the relevant portion of Document No. 60.

*Document No. 77.*  This document is similar in form and character to Document No. 46, and the Motion to Compel as to this document is denied for the same reasons the Court denied it as to Document No. 46.

*Document No. 78.* For the same reasons the Court granted the Motion to Compel as to Document Nos. 47-49, the Motion to Compel is granted as to this transcript of the OIG interview of Defendant Brown, which is highly relevant to the claims and defenses in this case and as to which Plaintiff has a significant need, as confirmed by the Court's *in camera* review.

*Document No. 79.*  This document is similar in form and character to Document No. 46, and the Motion to Compel as to this document is denied for the same reasons the Court denied it as to Document No. 46.

*Document No. 80.*  This transcript of OIG's interview with an officer who was a subordinate of Plaintiff in the Narcotics Division in June 2020, and who has not been alleged to have been deployed to Brown's home in June 2020, has a far lesser relevance to the matter than do the other transcripts in the OIG file, but the Court's *in camera* review confirms that Plaintiff's need for this transcript outweighs the City's interest in withholding it, so the Motion to Compel is granted as to this document, for the same reasons the Court granted the Motion to Compel as to Document Nos. 47-49 and 72.

*Document No. 81.*  Plaintiff's need for this transcript of OIG's interview with a very high-ranking Chicago police executive, who was among Defendant Brown's direct superiors during Brown's time as Narcotics Division commander as of June 2020, and with whom Brown had a longstanding professional relationship in the Police Department, is sufficient to outweigh the City's interest in withholding it.  Among other things, Defendant Brown's superior stated certain striking recollections – or lack thereof – concerning Brown's alleged deployment of Narcotics

Division officers in June 2020, and concerning Brown's May 2022 demotion. The Motion to Compel is granted as to this document for the same reasons the Court granted it as to Document Nos. 47-49, 72, and 80. But as to Bates pages 1059-67, which consist of the special events/unrest action plan as to which the Court has previously denied the Motion to Compel on the ground that it is protected by the law enforcement investigatory privilege, the Court denies the Motion to Compel for the same reasons stated as to Document No. 51 with regard to such action plans.

*Document No. 82*. This document is similar in form and character to Document Nos. 52 and 53, and the Motion to Compel as to this document is denied for the same reasons the Court denied it as to Document Nos. 52 and 53.

*Document No. 83*. This document appears to be Defendant Brown's personnel file from the Police Department. The Court is not aware of whether this document has already been discovered in the ordinary course of the litigation, and the Court is unsure of the extent of Plaintiff's need for the information, which is a sensitive employment record. Nonetheless, the Court sees the discoverability of the contents of this OIG file document as best addressed through party discovery, as it is available (or unavailable, as the case may be), through party discovery. Courts applying the law enforcement investigatory privilege have considered "whether the information sought is available through other discovery or from other sources," *Santiago*, 2010 WL 1257780, at *2, and the Court applies that consideration here to deny the Motion to Compel as to Document No. 83 under the *Dellwood Farms* balancing.

*Document No. 84*. This document consists of a string of text messages, apparently from June 2020, between Plaintiff and Defendant Brown and pertaining to the alleged deployment of Plaintiff to Brown's home at that time. Plaintiff appears to possess the information already. The Motion to Compel is denied as to this document under the *Dellwood Farms* balancing.

31

*Document No. 85.*  This is a report of an interview of a Police Department member with responsibility for managing the Department's overall personnel deployment during the June 2020 period of civil unrest in Chicago.  The City asserts that this report was "authored by an attorney" within OIG "based on notes from another attorney," so that OIG can "make judgments on whether OIG has the necessary proof to recommend discipline against City employees" and "in anticipation of potential litigation regarding imposed discipline or an appeal of imposed discipline."  However, the fact that an attorney conducted or participated in a witness interview, or that an attorney prepared the interview memorandum from another's notes, does not establish that the document is privileged or relates to the rendering of legal services.  The Court's *in camera* review of the document showed that it contained or communicated no legal advice or attorney mental impressions.  The document is simply an interview memorandum relating non-privileged underlying facts about how the City deployed police, at a very high level, in June 2020.  That is not enough to justify work-product or attorney-client protection.  As for the law enforcement investigatory privilege, the City's claims for protection of this information mirror those it asserted to shield documents like interview transcripts from discovery, and the Court finds those reasons unpersuasive for the same reasons it granted the Motion as to documents including Nos. 47-49, 72, and 80.  In the case of Document No. 85, Plaintiff's need for this relatively brief but informative factual information about the degree to which the Police Department's response to the June 2020 unrest involved a substantial citywide strain on the Department and its personnel outweighs the City's interest in withholding the document.  Under the *Dellwood Farms* balancing, the Motion to Compel is granted as to this document.

*Document No. 86.*  This document is a letter to OIG from former Police Superintendent David Brown reflecting his response to a question about the reasons for Defendant Brown's change

in assignment from Narcotics Division commander to 9th Police District lieutenant. The degree to which discovery of this document reveals protectible OIG investigative mental impressions, plans and direction is low, and Plaintiff's need for the response of Chicago's highest-ranking police official to this question is high. This is sufficient to tip the *Dellwood Farms* balancing in favor of discovery, particularly given the information elsewhere in the OIG file (Document No. 81) discussing the nature of former Superintendent Brown's role in the demotion of Defendant Brown. The Motion to Compel is granted as to this document.

*Document No. 87.* This document is an OIG "case initiation report" that is of little or no value to Plaintiff and reveals, to some extent, OIG's investigative processes to an extent justifying denial of the Motion to Compel under the *Dellwood Farms* balancing. The Court shields this document from discovery without reaching the City's deliberative process privilege claim.

*Document No. 88.* This document appears to be a duplicate of Document No. 3, and the Motion to Compel is granted as to this document for the same reasons the Court granted it as to Document No. 3.

*Document Nos. 89-91.* These documents consist of email communications between OIG staff and personnel of COPA, a police agency that investigates allegations of officer misconduct, and between OIG and the Chicago Police Department Bureau of Internal Affairs, which has a similar charge. The Court had difficulty conceiving of any need by Plaintiff for these documents, which reflect an internal City investigative process. The Motion to Compel is denied as to these documents under the *Dellwood Farms* balancing. The Court shields these documents from discovery without reaching the City's deliberative process privilege claim.

*Document No. 92.* This document is an internal OIG memorandum prepared by an OIG staff member who happened to be an attorney. Wackman Decl. ¶ 132. The memorandum distilled

information OIG received from the witness whose interview transcript is reflected in Document No. 68 into a bullet-point style listing of aspects of that witness's allegations in a state-court lawsuit, intended to obtain the response and the legal advice of the OIG general counsel. Thus Document No. 92 could be said to reflect the attorney's analysis of the court documents discussed in the memorandum. As such, the Court sustains OIG's assertion of the attorney-client privilege over this document, and the Motion to Compel is denied on this basis.

*Document No. 93.* This document is an iteration of the OIG plan for investigation into Plaintiff's allegations, and the Motion to Compel is denied as to this document, for the same reasons the Court denied the Motion as to Document No. 1. The Court does not reach the City's attorney-client, work-product and deliberative process privilege claims as to this document.

*Document No. 94.* This document is identical to a portion of Document No. 51 as to which the Motion to Compel was denied, and the Motion to Compel is denied here for the same reasons the Court denied it with respect to Document No. 51.

*Document No. 95.* This document consists largely of email communications between OIG attorneys, including about steps OIG took to communicate with BIA and COPA. The Court agrees with the City that these documents are in the nature of communications intended to be confidential and made for the purposes of rendering legal services. Thus, they are protected by the attorney-client privilege, and the Motion to Compel is denied as to these documents, without reaching the City's other privilege claims as to this document.

*Document Nos. 96, 97.* These external communications between OIG and Plaintiff's counsel, and between the Police Department general counsel and Plaintiff's counsel, are non-substantive such that Plaintiff's need for them is too low to outweigh the OIG's baseline interest

in the confidentiality of its investigative file. The Motion to Compel is denied as to these documents under the *Dellwood Farms* balancing and the law enforcement investigatory privilege.

*Document No. 98*. This document is similar in form and character to Document No. 95, and the Motion to Compel is denied for the same reasons the Court denied it as to Document No. 95.

*Document No. 99*. This document is identical to the CITA data analysis report as to which the Court denied the Motion to Compel with respect to Document No. 50, so the Motion to Compel is denied as to Document No. 99 for the same reasons.

*Document No. 100*. This document is an investigative timeline of events, and although it contains information that Plaintiff may find useful, her need for that component information does not outweigh, per *Dellwood Farms*, the agency's interest in protecting its investigative processes, methods, plans and procedures. The Motion to Compel is denied as to this document.

*Document Nos. 101, 102*. These documents relate entirely to internal OIG investigative processes and methods, and they are of little or no use to Plaintiff in this matter, so the *Dellwood Farms* balancing comes out squarely in support of denying the Motion to Compel, and it is denied as to these documents, without the Court reaching the deliberative process privilege claim the City asserts as to Document No. 101.

*Document No. 103*. This document is the set of attorney notes that were used to prepare the OIG interview memorandum in Document No. 85, as to which the Motion was granted. There is a difference between attorney notes and a summary interview memorandum, and even the grant of the Motion to Compel as to Document No. 85 does not change the fact that Document No. 103 contains attorney or investigator notes that are protected under the law enforcement investigatory privilege so long as the *Dellwood Farms* balancing comes out in favor of the privilege's

35

applicability, which it does here because the production of Document No. 85 (the OIG file memorandum of the interview) significantly lessens Plaintiff's need for the notes. Accordingly, the Dellwood Farms balancing favors denying the Motion to Compel as to Document No. 103, and it is so denied. Alternatively, the attorney notes were prepared by an OIG attorney for confidential communication to another OIG attorney or staff member for the purpose of creating the interview memorandum, and that purpose relates to the rendering of legal services, so Document No. 103 is protected from discovery by the attorney-client privilege. The Court's *in camera* review of the document does not indicate that it was prepared in anticipation of litigation; it was instead prepared as a part of the ordinary course of the OIG internal investigation. So the work-product doctrine does not apply to Document No. 103. For the foregoing reasons, the Motion to Compel is denied as to Document No. 103, without reaching the other privileges asserted by the City as to this document but not discussed above.

*Document No. 104.* This document is highly similar in form and character to Document No. 102, and the Motion to Compel is denied as to this document for the same reasons the Court denied it as to Document No. 102.

*Document No. 105.* This document is a revised investigative plan and is shielded from discovery by the law enforcement investigatory privilege, for the same reasons the Court found the privilege applicable to Document Nos. 1 and 93. The Motion to Compel is denied, without the Court reaching the attorney-client, work-product, and deliberative process privilege claims the City asserts as to this document.

*Document No. 106.* This document is identical to Document No. 91, and the Motion to Compel is denied as to this document for the same reasons the Court denied the Motion to Compel as to Document No. 91.

*Document No. 107.*  This document is highly similar in form and character to Document Nos. 52 and 53, and the Motion to Compel is denied as to this document for the same reasons the Court denied it as to Document Nos. 52 and 53.

## CONCLUSION

For the foregoing reasons and per the individualized discussion above of each of the 107 withheld documents, the Motion to Compel is partially granted and partially denied as stated above.  The law enforcement investigatory privilege does not offer blanket protection against civil discovery of a law enforcement agency's civil or criminal investigative file.  *Dellwood Farms* and other judicial decisions discussing or applying this judge-made privilege do not offer a set of clear standards for the interest balancing that courts must undertake, and nor do these decisions place clear boundaries around the kinds of law enforcement files that could fall within the privilege's protection.  Courts instead are instructed that the document-by-document interest balancing needed to evaluate and apply the law enforcement investigatory privilege is a "particularistic and judgmental task" that is "confided to the discretion of the district judge."  *Dellwood Farms*, 128 F.3d at 1125.  The magistrate judge has sought to do so here, exercising the substantial discretion afforded to magistrate judges with respect to discovery management.  *See Jones v. City of Elkhart, Ind.,* 737 F.3d 1107, 1115 (7th Cir. 2013).

**SO ORDERED.**

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: May 11, 2023**

37